In the Matter of the Application of JOHN J. HOPPER et
al., Appellants and Respondents, v. J. GABRIEL BRITT
et al., Constituting the Board of Elections of the City
of New York, Respondents and Appellants.

Election Law — party emblems — repetition of name of candi-
date under different emblems — provision of section 58 that name
of candidate shall not appear more than once upon a ballot an
unreasonable restriction upon freedom in voting.

1. The provision of section 57 of the Election Law (L. 1911, ch. 891)
that "the party emblem shall constitute the committee emblem of
the party " is not an abuse of the legislative power.

2. That part of section 58 of the Election Law (L. 1911, ch. 891) which provides that "the name of a candidate shall not appear more than once on the ballot as a candidate for the same public office or party position" is an unreasonable restriction upon freedom in voting and a violation of the fundamental law.

*Matter of Hopper* v. *Britt,* 149 App. Div. ——, affirmed.

(Argued March 4, 1912; decided March 7, 1912.)

CROSS-APPEALS from an order of the Appellate Division of the Supreme Court in the first judicial department, entered February 26, 1912, which modified, and affirmed as modified, as matter of law and not in the exercise of discretion, an order of Special Term granting a motion for a peremptory writ of mandamus.

By a petition which set forth the facts necessary to raise the questions, the relators asked the Supreme Court at Special Term to require the board of elections of the city of New York in providing ballots for the coming spring primaries to disregard certain provisions of the Election Law, as amended by chapter 891 of the Laws of 1911, upon the ground that they are unconstitutional and void. Those provisions, so far as now material, are as follows:

1. That part of section 57 which provides that "The party emblem shall constitute the committee emblem of the party."

2. That part of section 58 which provides that "The name of a candidate shall not appear more than once on the ballot as a candidate for the same public office or party position."

The Special Term granted the motion and issued a peremptory writ accordingly, upon the ground that both of said provisions violate the Constitution. On appeal to the Appellate Division the order was modified by reversing the portion relating to the party emblem and affirming as to the part relating to the name of a candidate.

The relators appealed from so much of the order as

reversed in part the order of the Special Term, and the board of elections appealed from so much of the order as affirmed in part the order of the Special Term.

*Herbert R. Limburg* for petitioners, appellants and respondents. The provisions of chapter 891 of the Laws of 1911, attacked in this proceeding, are unconstitutional and void. (*Matter of Callahan,* 200 N. Y. 60; *Matter of Hopper* v. *Britt,* 203 N. Y. 144; *Matter of Terry,* 203 N. Y. 293; *People ex rel. Coffey* v. *Democratic Com.,* 164 N. Y. 335; *People ex rel. McCarren* v. *Dooling,* 128 App. Div. 1; *Matter of Hines,* 141 App. Div. 569.) The provision donating to the committee nominees the use of the party emblem is unconstitutional and void. (*Matter of Callahan,* 200 N. Y. 60; *Matter of Hopper* v. *Britt,* 203 N. Y. 144; *Matter of Terry,* 203 N. Y. 293.) The prohibition against the name of a candidate appearing on the ballot more than once is unconstitutional and void. (*Matter of Hopper* v. *Britt,* 203 N. Y. 144; *Matter of Terry,* 203 N. Y. 293.)

*Archibald R. Watson, Corporation Counsel* (*Terence Farley* of counsel), for defendants, respondents and appellants. That provision of the Primary Law which authorizes the use of the party emblem by the candidates designated by the party committee is not unconstitutional. (*Matter of Greene,* 9 App. Div. 223; 150 N. Y. 566; *Matter of Wise,* 108 App. Div. 52; *Matter of Fitzgerald,* 51 Misc. Rep. 491; *Matter of Quimby,* 116 App. Div. 142; *People ex rel. McCarren* v. *Dooling,* 128 App. Div. 1; 193 N. Y. 604; *Matter of Coffey,* 164 N. Y. 335.) A primary election, which is simply a new method of nominating candidates for public office, is not an election within the meaning of article 2, section 5, of the State Constitution. (*People ex rel. Jackson* v. *Potter,* 47 N. Y. 375; *State ex rel. Zeut* v. *Nichols,* 50 Wash. 508; *State ex rel. Gulden* v. *Johnson,* 87 Minn. 221; *Montgomery* v. *Chelf,* 118 Ky. 766; *Line* v.

*Election Canvassers*, 154 Mich. 329; *People* v. *Cavanaugh*, 112 Cal. 674; *Gray* v. *Seitz*, 102 Ind. 1; *Com. ex rel. Directors of Poor* v. *Wells*, 110 Penn. St. 463; *Leonard* v. *Com.*, 112 Penn. St. 622; *Lillard* v. *Mitchell*, 37 S. W. Rep. 702.)

*A. S. Gilbert* for Republican party of the county of New York, intervening. The order appealed from is correct in so far as it holds the provisions of law as to emblems to be constitutional. (*Matter of Hopper* v. *Britt*, 203 N. Y. 144; *Matter of Terry*, 203 N. Y. 293.)

*James A. Foley* for Democratic party of the county of New York, intervening.

Vann, J. The method of nominating party candidates for public office through a convention of delegates, which prevailed in this state for time out of mind, was mainly done away with by the act of the legislature now called in question and a new method of nominating by committees set up in its place. This was done by the Primary Law, so called, which is really an amendment of the Election Law (L. 1911, ch. 891). The statute now provides for the election of party committees and the selection of party candidates by the ballots of party voters cast at the primaries. The party committee is authorized to designate candidates for nomination and other candidates may be designated by petition embracing not less than five per cent of the enrolled voters of the party within the district and by not less than four per cent of the entire vote cast in the political subdivision for the party candidate for governor at the last preceding gubernatorial election, and whoever receives the greatest number of votes at the primary thereby becomes the candidate of the party. It is provided by section 57 that "The party emblem shall constitute the committee emblem of the party," and each set of petitioners, if there is more than one, may select its own emblem and if it fails to do

so the secretary of state is required to provide one. The relators claim that all nominees presented for support at the primaries are entitled to stand on the same footing and that in making the party emblem the committee emblem of the party the legislature made an unjust and unfair discrimination.

An entire article of the statute is devoted to party organization by means of committees elected by the enrolled members of the party, including a state committee and a committee for each district where a public officer is to be elected by the voters thereof. Each committee is required to organize by the election of officers and is authorized to prepare rules for the government of the party and the conduct of official primaries within its political subdivision. It thus becomes the governing body of the party in the state or district for which it was elected. The committee represents the party because it is elected by the party voters at the primaries. It is within the power of the legislature to give it the party emblem because it represents the party and is the agency provided for the management of the party. If, however, a certain percentage of the party voters are not satisfied with the candidates designated by the committee, they may designate their own candidates by petition. Other members of the party may do the same and thus two or more sets of candidates for nomination would be presented to the party voters who make their choice by the vote of a majority. Emblems are necessary at primaries the same as at regular elections so as to enable the voter to avoid mistakes and vote intelligently. The provision in question simply gives effect to the truth, to the situation as it really exists, for the committee does not represent a faction in the party but the party itself so far as it takes action authorized by law. It is the administrative body of the party, subject only to the limitations of the statute and the rules duly adopted by the party. If the opposition elects its committees this year they will

represent the party next year and be entitled to its emblem. . The committee in power, having been chosen by the voters of the party as its agent for party purposes, necessarily represents the party as to those purposes.    By an amendment made this year existing committees are continued until their successors are elected.   (L. 1912, ch. 4, § 5.)

It is true that the candidates of the regular organization ordinarily have an advantage, because the majority of voters are generally in favor of the organization created by themselves, but this is an inherent and legitimate advantage which cannot be done away with. Under the present system the committee would not be the organization if a majority of the party voters had not made it the organization.   The party voter has the right to know what candidates for nomination were designated by the committee, for he has the right to vote for them, or against them, simply because they are the nominees of the committee.   He has the right to vote for the committee's candidates merely because the committee presented them and the emblem enables him to know whom he is voting for.   In some cases the candidates of the committee instead of having an advantage might be put at disadvantage, owing to widespread dissatisfaction with the general conduct of the committee.   The use of the party emblem has the same effect as if the statute had authorized the committee to place at the head of their set of candidates, "Organization Ticket," leaving petitioners to put at the head of their list of candidates "Opposition Ticket," "Anti-Organization Ticket" or something of like character to show what ticket it is.   To such a method, if authorized by the legislature, we see no constitutional objection, because it would simply give the voter the information he is entitled to.   The object of the Primary Law is to enable the party voter to vote for the candidates that he chooses and the emblem is simply a guide to intelligent

34

choice.    There is nothing to prevent him from voting for
the candidate he wishes to have nominated.    Every party
voter can cast his ballot with the same ease and freedom
that is afforded to any other voter.    There is absolute
equality of opportunity.    There would be unfair discrimi-
nation if one set of candidates could have an emblem and
the others none, but the fact that the nominees of the com-
mittee are given the party emblem because they are the
official representatives of the party for the time being is
not an unfair discrimination.    As was said by Mr. Justice
DOWLING for the Appellate Division: "The mere fact
that the party committee which, until displaced, repre-
sents the majority of the party membership, is given the
right to use the party emblem, is not an abuse of the
legislative power."

The remaining question involves the validity of the
provision that the name of a candidate shall not appear
more than once on the ballot as a candidate for the same
public office or party position.

It is contended on the one hand that the word "elec-
tions," as used in the Constitution, refers only to the
election of public officers and not to the selection of party
candidates, and, on the other, that, as electors can vote
effectively only for candidates nominated by some kind of
an organization, whatever interferes with ease and free-
dom in the selection of candidates hampers the exercise of
the elective franchise.

We have held that statutory provisions " forbidding a
committee of any party or independent body authorized
either to make nominations or to fill vacancies to nominate
a candidate of another party or independent body for the
same office are plainly invalid and unconstitutional."
(*Matter of Callahan,* 200 N. Y. 59, 60.)    In deciding that
case the chief judge, speaking for a majority of the
judges, said: " If the legislature does grant to any con-
vention, committee or body the right to make nomina-
tions, it cannot limit the right of such convention, com-

mittee or body to nominate as its candidate any person who is qualified for the office. * * * If it cannot enact arbitrary exclusions from office, equally it cannot enact arbitrary exclusions from candidacy for office. What exclusion could be more arbitrary than that one party or organization should not be permitted to nominate the candidate of another ? "

In *Matter of Hopper* v. *Britt* (203 N. Y. 144) we held that a statute providing that the name of a person nominated by more than one political party should be printed but once upon the ballot provided for regular elections was unconstitutional to that extent, because it made an unjust discrimination between voters in the facility afforded them in casting their ballots for the candidates of their choice.

In *Matter of Burke* v. *Terry* (203 N. Y. 293) it was held that the rule of "equality of opportunity so far as practicable " applies " to the right to participate in making independent nominations."

Freedom in voting is guaranteed by the Constitution. The right to vote carries with it the right to nominate candidates to be voted for so that voting may become effective through co-operation. Any statute which restrains freedom in nominating candidates at the primary, restrains freedom in voting for candidates at the regular elections. Some restrictions may be necessary in order to so regulate the right as to properly protect it, but any unnecessary or unreasonable restraint is in conflict with the Constitution, not because that instrument refers to primary elections, but because statutory provisions relating to primary elections, when they restrain freedom in nominating, also restrain freedom in voting. The provision in question prevents voters belonging to one organization from nominating as their candidate one who has already been nominated by another organization. This compels them to leave blank the space provided in their ticket or column for that position, and thus

the voter in order to vote for that candidate is obliged to search for it in another ticket or column and make the additional marks necessary, which leads to confusion, and tends to frustrate the intention of the voter to vote for all the candidates of his organization. Whatever gives one class of voters, either at an election or a primary, an undue advantage over any other class, tampers with a constitutional right. If the voters who support candidate A stand a better chance to nominate him than those who support candidate B have to select him, the rights of the latter are unlawfully interfered with. Such is the situation created by the provision in question, which we regard as an unreasonable restriction upon freedom in voting and, according to the principles established by our decisions, a violation of the fundamental law.

The order appealed from should be affirmed, without costs.

CULLEN, Ch. J. (dissenting). I vote for the reversal of so much of the order of the Appellate Division as affirmed the order of the Special Term directing the board of elections in printing the tickets for primary elections to disregard the provisions of section 58 of the Election Law, which enacts that the name of a candidate shall not appear more than once on the ballot for the same public office or party position. That this inhibition operates unequally and unfairly on the different members of a party who vote at the election is plain, and if a primary election were a real election the statutory provision would be unconstitutional. (*Matter of Hopper* v. *Britt*, 203 N. Y. 144.) But a primary election is not a real election. The whole scheme is extra-constitutional, and to it constitutional safeguards have no application. In my judgment the law is only applicable to such parties or organizations of electors as voluntarily see fit to avail themselves of it. If the adoption of it by an

organization is voluntary the statute must be taken as it is, and complaint cannot be made that it is unfair.

But it is assumed that the statute is mandatory and controlling on political parties or organizations, and that nominations for office by such organizations must be made solely in the method prescribed by the statute. If this be so undoubtedly the argument that the statutory provision is unconstitutional is cogent if not conclusive, for it may be contended that election at the primary is ordinarily a necessary step towards election at the polls. But I deny that the provisions of the Primary Law are controlling on the action of political organizations. I also deny that the legislature can make them so. I adhere to the views expressed by me in the dissenting opinion in the case of *People ex rel. Coffey* v. *Democratic Committee* (164 N. Y. 335, 349) that "The liberty of the electors in the exercise of the right vested in them by the Constitution to choose public officers on whatever principle or dictated by whatever motive they see fit, unless those motives contravene common morality and are, therefore, criminal, cannot be denied. It seems to me as absolute as the right to pursue any trade or calling, and, therefore, their right to associate and organize for that purpose is equally great." The present Primary Law, if mandatory, not only denies a body of electors the right to associate with whom they will for the purpose of political action, but assumes to dictate to them how and in what manner they shall select the nominees for office whose election they shall advocate and in whose behalf the organization's machinery and prestige shall be exerted. Hitherto political parties in this state have selected their nominees for office by conventions of delegates, not by the direct vote of members of the party, except in one or two small rural communities. Whether that method or a direct vote will secure the choice of nominees best qualified to fill the offices for which they are candidates may well be the subject of difference of opinion

But that is a question to be determined solely by the electors themselves. It is true the Constitution recognizes the existence of parties, but there is nothing in that instrument which either in terms or by implication authorizes the legislature to regulate party action except as it may punish crimes committed in any organization. It is also true that the government of this state is not a pure democracy, but representative in character; that the people have intrusted the exclusive enactment of the laws to the legislature to such an extent that they have deprived themselves of the power to enact a law even when the question of its enactment is submitted to them by the legislature. But, nevertheless, our government is founded on the doctrine that the source of all the power of government springs from the people, and the people have not wholly alienated their rights but have secured to themselves the ultimate control of government by reserving the right to elect the constitutional officers. For this purpose electors may associate themselves for political action with just such other electors as they please, provided the other electors are willing. They may choose their candidates for public office in such manner as they deem best and at such times as they deem wise. This, in my judgment, is the inherent right of the electors.

The great misfortune of the day is the mania for regulating all human conduct by statute, from responsibility for which few are exempt, since many of our most intelligent and highly educated citizens, who resent as paternalism and socialism legislative interference with affairs in which they are interested, are most persistent in the attempt to regulate by law the conduct of others. The great mass of such laws, wise or unwise, it is within the power of the legislature to enact. But the limits of that power, in my judgment, are passed when public officers assume to dictate to their masters, the electors, the principle on which the latter shall choose them.

If the statute is mandatory, in my opinion, it is unconstitutional and void, and, therefore, mandamus will not lie to compel the board of elections to take any action under it.

GRAY, HISCOCK and CHASE, JJ., concur with VANN, J.; CULLEN, Ch. J., reads dissenting opinion; COLLIN, J., dissents on ground that constitutional provisions do not apply to primary elections; WILLARD BARTLETT, J., absent.

Order affirmed.