PEOPLE ex rel. HOTCHKISS et al. v. SMITH et al., Board of Elections.

(Supreme Court, Extraordinary Special Term, Westchester County.
August 30, 1912.)

1. ELECTIONS (§ 21*)—PRIMARY ELECTIONS—REGULATIONS.

The Legislature may not impose any unnecessary hindrance to the nomination of or voting for independent candidates, nor impose unreasonable limitations on independent political groups seeking an opportunity to vote for independent candidates.

[Ed. Note.—For other cases, see Elections, Cent. Dig. § 15 ; Dec. Dig. § 21.*]

2. ELECTIONS (§ 21*)—NOMINATION BY PETITION—STATUTES—VALIDITY.

The provision of Election Law (Consol. Laws 1909, c. 17) § 122, as amended by Laws 1911, c. 891, which requires 1,500 signatures to an independent nominating petition for county officers, is invalid, as an unreasonable and an unjust discrimination against independent political parties.

[Ed. Note.—For other cases, see Elections, Cent. Dig. § 15 ; Dec. Dig. § 21.*]

3. ELECTIONS (§ 21*)—NOMINATION BY PETITION—STATUTES—VALIDITY.

The Legislature has the power to regulate the manner of making independent nominations for public office and determine the number of nominators; but the regulations, to be valid, must be reasonable, and not impose unnecessary limitations, or deprive independent bodies of equality of opportunity with all other bodies and parties.

[Ed. Note.—For other cases, see Elections, Cent. Dig. § 15 ; Dec. Dig. § 21.*]

4. CONSTITUTIONAL LAW (§ 70*)—LEGISLATIVE FUNCTIONS—JUDICIAL FUNCTIONS.

The court, declaring invalid the provision in Election Law (Consol. Laws 1909, c. 17) § 122, as amended by Laws 1911, c. 891, requiring 1,500 signatures to an independent nomination petition for county officers, may not determine what will be a reasonable number of signers for an independent nomination, since that is exclusively a matter for legislative action.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 129–132, 137; Dec. Dig. § 70.*]

5. ELECTIONS (§ 21*)—NOMINATIONS BY PETITION—STATUTES.

The provision of the Election Law of 1890 (Laws 1890, c. 262), requiring 1,000 signatures to an independent nominating petition for county officers, will not be declared invalid, as unreasonable and unjustly discriminatory, in view of the fact that it has been in force for many years without being attacked, and such law controls, on Election Law (Consol. Laws 1909, c. 17) § 122, as amended by Laws 1911, c. 891, being adjudged invalid.

[Ed. Note.—For other cases, see Elections, Cent. Dig. § 15 ; Dec. Dig. § 21.*]

6. ELECTIONS (§ 21*)—NOMINATIONS BY PETITION—STATUTES.

The provision of Election Law (Consol. Laws 1909, c. 17) § 123, as amended by Laws 1911, c. 649, which strikes from an independent nominating petition the name of an enrolled member of a political party nominating a candidate, is invalid, as unreasonable and as unnecessarily obstructing the making of independent nominations.

[Ed. Note.—For other cases, see Elections, Cent. Dig. § 15 ; Dec. Dig. § 21.*]

7. ELECTIONS (§ 21*)—NOMINATIONS BY PETITION—STATUTES.

The provision of Election Law (Consol. Laws 1909, c. 17) § 123, as amended by Laws 1911, c. 649, that no person shall join in nominating more candidates for any office than there are persons to be elected thereto, and no certificate shall contain the names of more candidates for any

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

office than there are persons to be elected to such office, is invalid, if construed to prohibit an elector participating in a party caucus from thereafter signing an independent nominating certificate, but is valid if construed as limiting the right of an- elector to the signing of but one nominating certificate.

[Ed. Note.—For other cases, see Elections, Cent. Dig. § 15 ; Dec. Dig. § 21.*]

8. ELECTIONS (§ 21*)—NOMINATIONS BY PETITION—STATUTES.

The provision in Election Law (Consol. Laws 1909, c. 17) § 123, as amended by Laws 1911, c. 649, that the name of no person signing an independent certificate of nomination shall be counted, unless he shall, on one of the dates of registration of such year, be registered as a qualified voter, is invalid, as unreasonable, and as unnecessarily discriminatory.

· [Ed. Note.—For other cases, see Elections, Cent. Dig. § 15 ; Dec. Dig. § 21.*]

9. ELECTIONS (§ 143*)—INDEPENDENT NOMINATIONS—STATUTORY REGULATIONS.

The rule regulating independent nominations must be the same as the rule governing other nominations, and the nominators must be, at the time of the making of the nominations, duly qualified electors and entitled to register and vote.

[Ed. Note.—For other cases, see Elections, Cent. Dig. § 121 ; Dec. Dig. § 143.*]

10. ELECTIONS (§ 21*)—PRIMARY ELECTIONS—INDEPENDENT NOMINATIONS—STATUTORY REGULATIONS—VALIDITY.

The provision of Election Law (Consol. Laws 1909, c. 17) § 122, as amended by Laws 1911, c. 891, requiring 800 signatures to an independent nominating petition to nominate an assemblyman, will not be adjudged invalid, as unreasonable.

[Ed. Note.—For other cases, see Elections, Cent. Dig. § 15 ; Dec. Dig. § 21.*]

11. MANDAMUS (§ 74*)—REGULATION OF ACTIONS OF BOARDS OF ELECTIONS.

Mandamus lies to control the action of the board of elections of a county, to the end that it may be known, prior to the last day for the filing of nominating certificates, how many electors and who may sign such certificates, and that the board may know what certificates they are to receive, file, and act on.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 150–157 ; Dec. Dig. § 74.*]

Mandamus by the People, on the relation of William H. Hotchkiss and another, against John Smith and another, constituting the Board of Elections of Putnam County. Motion for peremptory writ granted in part.

William M. Chadbourne, of New York City (Albert S. Bard, of New York City, of counsel), for relators.

J. Hampton Dougherty, of New York City, for Empire State Democracy.

· Julius Henry Cohen, of New York City, for Citizens' Union of New York City.

Henry T. Dykman and Henry C. Henderson, both of White Plains · (Aaron J. Levy, of New York City, of counsel), for Board of Election Com'rs.

TOMPKINS, J. This is a motion for a peremptory writ of mandamus, directed to the board of elections of Putnam county, requiring

said board to disregard certain provisions of the Election Law (Consol. Laws 1909, c. 17), and the laws known as chapters 649 and 891 of the Laws of 1911, amending sections 122 and 123 of the Election Law, relating to the number and qualifications of the signers of independent nominating certificates, upon the ground that such provisions are unconstitutional and void. The provisions of the Election Law that are directly attacked in this proceeding are as follows:

(1) The provision requiring 1,500 signatures to an independent nominating petition for county officers and 800 signatures to nominate an assemblyman.

(2) The addition to section 123 of the Election Law reading as follows:

"The name of no person signing an independent certificate of nomination shall be counted unless such person shall on one of the days of registration in such year be registered as a qualified elector, and in case a candidate nominated by an independent certificate of nomination be at the time of filing the said certificate or afterwards the candidate of a political party for the same office the name of no person who is an enrolled member of such political party shall be counted."

(3) That part of section 123 reading as follows:

"No person shall join in nominating more candidates for any one office than there are persons to be elected thereto."

It is claimed by the relators that the effect of this provision is to prevent any elector, who voted at the spring primaries of 1912 for members of the state committee of any party (these in turn being charged by section 54 of the Election Law with the duty of nominating presidential electors) from signing an independent nominating certificate for presidential electors for the coming election. The substance of the relator's contention is that these provisions deprive independent political bodies or groups of that equal opportunity to nominate and vote for candidates of their choice that is guaranteed to all duly qualified voters by the Constitution of this state.

[1] The Court of Appeals, in the matter of Hopper v. Britt, 203 N. Y. 144, 96 N. E. 371, after reciting the provisions of the Constitution respecting the right of franchise and the qualifications of voters, said:

"It is therefore clear that the otherwise plenary power granted to the Legislature to prescribe the method of conducting elections cannot be so exercised as to disfranchise constitutionally qualified electors, and any system of election that unnecessarily prevents the elector from voting, or from voting for the candidate of his choice, violates the Constitution. We have said 'unnecessarily,' for there is no practicable system of conducting elections at which some electors, by sickness or other misfortune, may not be able to vote. Under our law, the blank ballot affords a voter who may be unable to read the ballot, from illiteracy or physical defect, an opportunity to vote by securing assistance, and to every elector the right to vote for whom he chooses by writing the name in the blank column, if the name of his candidate is not on the ballot. If these rights were not accorded, the present election law would be unconstitutional. In People ex rel. Goring v. President, etc., of Wappingers Falls, 144 N. Y. 616 [39 N. E. 641], a vacancy occurred in the office of police justice of the village. At the next election the official ballot did not contain the name of that office, or of any candidate to be voted therefor. The elector received votes at the election; the voters

writing his name and the office on the ballot. It was contended that, under the language of the election law, the votes were invalid. This court held the election good, saying: 'The Legislature may prescribe regulations for ascertaining the citizens who shall be entitled to exercise the right of suffrage, for that power is given to it by the Constitution. In prescribing regulations for that purpose, or in respect to voting by ballot, it does so subject to, and presumably in furtherance of, the constitutional right, and its enactments are to be construed in the broadest spirit of securing to all citizens possessing the necessary qualifications, the right freely to cast their ballots for offices to be filled by election, and the right to have those ballots, when cast in compliance with the law, received and fairly counted. Legislation which fails in such respects, and prevents the full exercise of the right as secured by the Constitution, is invalid.' * * * We think the constitutional provisions recited and the provision that certain officers shall be chosen by the electors, necessarily further imply that every elector shall have the right to cast his vote with equal facility to that afforded to other voters, or, to speak more accurately, without unnecessary discrimination against him as to the manner of casting his vote. * * *

"While the Constitution does not guarantee that the elector shall be allowed to express his vote by a single mark, our suggestion is that he is guaranteed the right to express his will by a single mark if other voters are given the right to express theirs by a single mark, and there is no difficulty in according the right to all. It is said by the Supreme Court of Ohio in State v. Bode, 55 Ohio St. 224 [45 N. E. 195, 34 L. R. A. 498, 60 Am. St. Rep. 696], in upholding a law of this kind: 'There is no discrimination against or in favor of any one; and, if any inequality arises, it arises, not from any inequality caused by the statute, but by reason of inequalities in the persons of the voters, and such inequalities are unavoidable. It is always much more difficult for some electors to cast their votes than others. Distance, bad roads, means of transportation, bad health, and many other considerations, may and do render it much more difficult for some men to cast their ballots than others. But these difficulties inhere in the men themselves, and not in the law.' * * * This argument ignores the distinction between difficulties or inconveniences occurring by nature or accident and inconveniences created by statute. Inequality in the facilities afforded the electors in casting their votes may defeat the will of the people as thoroughly as restrictions which the courts would hold to operate as a disfranchisement of voters. * * * But not only are all parties or bodies polling 10,000 votes, which is less than 1 per cent. of the whole vote of the state, given the right to a separate column, but independent bodies, on the petition of but a small fraction of the electorate, have the same right. Thus the rights of the electors of all organizations which have the most remote or shadowy chance of electing their nominees are given equal rights with those of the great parties, while the inviolable right of every elector is secured by the blank column. But if the character of the ballot necessarily involves discrimination against certain classes or bodies of electors, it is a reason that the statute should not increase the discrimination.

"It has been urged in justification of the statutory provisions before us that independent bodies are often organized for the sake of trading or combining with the regular parties or other organizations on corrupt considerations. It is not pretended, however, that the statute tends to prevent that evil save in one way, by making it more difficult to vote fusion or coalition tickets. The same argument was advanced in the matter of Callahan, 200 N. Y. 59 [93 N. E. 262, 140 Am. St. Rep. 626], where it was held that the Legislature could not constitutionally prevent the nomination of fusion or combination candidates. We there said: 'The liberty of the electors in the exercise of the right vested in them by the Constitution to choose public officers on whatever principle or dictated by whatever motive they see fit, unless those motives contravene common morality, and are therefore criminal, such as bribery, violence, intimidation, or fraud, cannot be denied.' * * * The method of voting on an official ballot which has prevailed with us now

for a number of years probably has corrected evils that formerly were prevalent, but personally I fear that in some respects it has undermined public morality on the question of the right of the elector to vote for whom he will, provided it is dictated by no criminal consideration. Ever since the adoption of the present scheme there has been an attempt to provide a ballot in such form as to prevent the elector from voting in the way he wishes to vote. In this constant effort it must be conceded that persons desirous of so-called ballot reform, and not political partisans, have been the most active, though by the present legislation the latter seem to have been more successful. All labors by a citizen to induce his fellow citizens to change the principle on which they cast their votes, when he believes that principle is injurious to the welfare of the community, are praiseworthy and patriotic. But, however gross may be the error of his fellows, he has no moral right to correct that error by making it difficult for them to exercise their constitutional right."

In Matter of Hopper, 204 N. Y. 524, 98 N. E. 86, the same court said:

"Freedom in voting is guaranteed by the Constitution. The right to vote carries with it the right to nominate candidates to be voted for, so that voting may become effective through co-operation. Any statute which restrains freedom in nominating candidates at the primary restrains freedom in voting for candidates at the regular elections. Some restrictions may be necessary, in order to so regulate the right as to properly protect it; but any unnecessary or unreasonable restraint is in conflict with the Constitution, not because that instrument refers to primary elections, but because statutory provisions relating to primary elections, when they restrain freedom in nominating, also restrain freedom in voting. * * * Whatever gives one class of voters, either at an election or a primary, an undue advantage over any other class, tampers with a constitutional right. If the voters who support candidate A stand a better chance to nominate him than those who support candidate B have to select him, the rights of the latter are unlawfully interfered with."

Thus it is seen that the settled law of the state is that no unnecessary hindrance shall be placed in the way of nominating or voting for candidates independent of the recognized political parties, and that no unreasonable restraints or limitations shall be placed upon independent political groups or bodies, who seek an opportunity to vote for candidates other than those whose names appear in the party columns of the official ballot. Equality of opportunity, both to nominate and vote for candidates, is the guaranty of the Constitution as it has been interpreted by our highest court.

Applying that rule, it follows that certain of the provisions in question contravene the constitutional rights of electors. The policy of the law, as it has been declared by the courts, is to facilitate the free choice of the elector, both in the matter of nominations and at the polls, while the effect of these provisions is to make more difficult, if not impossible, the selection of candidates to be voted for by those who are not in accord with party principles or in favor of party nominations.

[2] To require 1,500 signatures to a nominating certificate for county offices in Putnam and other small counties of the state is unreasonable, and an unjust discrimination against independent political parties. The total average vote of Putnam county is a little over 3,000. It may be assumed, for the purpose of this discussion, that there will be three tickets in the field at the coming election, namely,

Republican, Democratic and National Progressive, besides the Socialist and Prohibition tickets. Dividing the total vote of that county into three equal parts, we have a little over 1,000 votes cast for each of the three leading parties, or 500 less than the number required by the election law to make independent nominations, thereby making it impossible for the Progressives (so called) to nominate county officers, even assuming that one-third of the entire electorate of the county desire to support such a ticket.

In several other counties of the state the total vote is between 3,000 and 5,000, and there, too, the requirement of 1,500 signatures to a petition for county officers is unreasonable, and would work injustice to independent political parties.

In Hamilton county the total vote for Governor in 1910 was less than 1,200; yet under this law an independent group of electors must secure 1,500 electors to sign a nominating certificate for independent county nominations—more than the total of all the voters in the county. To require 1,500 names to an independent nominating certificate for county officers in any but a few of the larger counties of the state makes unjust discrimination in favor of the old political parties, and places unreasonable hindrances in the way of those bodies of electors who are not in accord with the old parties.

How can it be said that an independent political body has equal opportunity to nominate candidates for county offices with the old parties, when for the latter no prescribed number of votes is necessary and a very few may name candidates, while the former must procure 1,500 signers?

[3] Of course, independent bodies of voters have not the same status as regular party organizations, and regulations respecting the manner of making nominations and legislation determining the number of nominators is proper and necessary; but such legislation and regulations, to be valid, must be reasonable, and not impose difficult and unnecessary restraints, hindrances, or limitations, or deprive such independent bodies of equality of opportunity with all other bodies and parties. In the case of People ex rel. Coffey v. Democratic Committee, 164 N. Y. 335, 58 N. E. 124, 51 L. R. A. 674, Judge Cullen, in a dissenting opinion (but not on this point), said:

"The right of the electors to organize and associate themselves for the purpose of choosing public officers is as absolute and beyond legislative control as their right to associate for the purpose of business or social intercourse or recreation. The Legislature may, doubtless, forbid fraud, corruption, intimidation, or other crimes in political organizations, the same as in business associations; but beyond this it cannot go. * * * The liberty of the electors in the exercise of the right vested in them by the Constitution to choose public officers on whatever principle or dictated by whatever motive they see fit, unless those motives contravene common morality, and are, therefore, criminal, cannot be denied."

In the matter of Burke v. Terry, 203 N. Y. 293, 96 N. E. 931, Judge Willard Bartlett, writing for the court, said:

"The franchise of which no 'member of this state' may be deprived is not only the right of citizens who possess the constitutional qualifications to vote for public officers at general and special elections, but it also includes the

right to participate in the several methods established by law for the selection of candidates to be voted for. The Legislature of this state in its wisdom decided some years ago to adopt an official ballot, to be printed at the public expense, upon which the voter indicates his preference by cross-marks placed opposite the names of those candidates whose election he desires. In providing for such a ballot it was not only proper, but necessary, to prescribe the conditions which should entitle political parties and independent bodies of citizens to have the names of their nominees appear upon the ballot in print. It is argued that these conditions are wholly within the discretion of the Legislature, and not subject to judicial review or control; but this proposition' is subject to the qualification that no condition can be imposed which conflicts with the constitutional rights of electors, express or implied. We have recently held that one of these implied constitutional rights is equality of opportunity so far as practicable. The Chief Judge, speaking for the unanimous court in the matter of Hopper v. Britt, 203 N. Y. 144, at page 151 [96 N. E. 371, at page 373], said: 'We think the Constitutional provisions recited and the provision that certain officers shall be chosen by the electors necessarily further imply that every elector shall have the right to cast his vote with equal facility to that afforded to other voters, or, to speak more accurately, without unnecessary discrimination against him as to the manner of casting his vote.' The same rule applies to the right to participate in making independent nominations. * * *

"Still another suggestion requires notice. It is said that no regulation which the Legislature may see fit to impose in respect to independent nominations can be subject to any attack for validity under the Constitution, inasmuch as the Legislature need not have permitted independent nominations to be printed upon the official ballot at all. To this view we are unable to assent. The framers of the Election Law which first provided for the official ballot properly recognized the unquestionable fact that it is a great practical advantage to political parties and their candidates to have the names of the nominees appear upon the ballot in print. They also properly recognize the possibility, which experience has proved to be a probability, not to say certainty, that large bodies of citizens not constituting political parties might desire to unite in the effort to elect candidates of their own selection, and that these bodies might justly claim a place for their nominees in print upon the official ballot. This claim is so manifestly just, and its recognition so essential to prevent that unconstitutional discrimination against the rights of electors which was condemned in the Hopper Case, supra, that we should regard any legislation as plainly invalid which allowed only the names of party candidates to be printed upon the official ballot, to the exclusion of candidates named by considerable bodies of citizens acting independently of party."

The tendency of recent legislation has not been in line with the attitude of the Court of Appeals on this question, but decidedly away from it, and from time to time the legislation enacted has made it very difficult for independent nominations to be made. By Laws 1890, c. 262, 1,000 signatures were required for independent nominations for state officers. That number has been increased, until by the present law 6,000 are required. The law of 1890 required 250 signatures for county officers. That number has been increased from time to time until, by the present law, 1,500 are required. By the law of 1890 100 signatures were required for an assembly district nomination. Now ·800 are necessary.

In the argument of this motion, Mr. Levy, the chairman of the judiciary committee of the state assembly in 1911, and whose name the present law bears, very frankly stated that the purpose of the present law was to make independent nominations more difficult. That,

however, is contrary to the spirit of our institutions and the underlying principle of our state Constitution, and the decisions of the Court of Appeals during the last few years. It seems to me that a percentage basis would be the fairest method of regulating the number of signers of independent certificates, thereby making the number required depend upon the population or the voting population of the several counties of the state.

[4, 5] Upon the argument of this motion, the question arose as to what law or rule would control the making and filing of independent nominating certificates, in the event that the provisions of the present law are declared unconstitutional. It was suggested that the court could fix and determine what would be a reasonable number of signers for such a certificate. That, however, is beyond the province of the court, and a matter for legislative action only. My opinion is that, if the present law is unconstitutional and invalid, the last preceding legislative enactment fixing the number of nominators must control; but the relators say that, if that view is to be adopted by the court, it should be held that the provision of the law of 1896 requiring 1,000 signatures for county officers is also unreasonable and invalid. My view, however, is that the court should not declare to be unreasonable and unjustly discriminating a law which was in force for 15 or 16 years without any attack being made upon it.

My conclusion, therefore, as respecting the number of signers required for independent nominations of county officers, is that the present law is unreasonable and unjustly discriminative and void, and I refuse to find that the statute of 1896 was unreasonable in its provisions. Whether the board of election commissioners shall follow the provisions of the law of 1896 respecting the number of nominators on independent certificates, or follow the advice of counsel, or seek instructions from the Attorney General, this court does not undertake to determine.

[6] The provision of section 123 of the Election Law, which strikes from an independent nominating petition the name of an enrolled member of a party if the party nominates the same candidate, and prevents the counting of the names of those who may not register on one of the dates of registration, are also unconstitutional, because they unreasonably and unnecessarily impede and obstruct the making of independent nominations. The effect of these provisions is to prevent an enrolled member of a party from leaving his party and uniting in the nomination of independent candidates, and also to invalidate and destroy a petition that was sufficient and valid at the time it was filed, because of the failure of one or more of its signers to thereafter register. Why may not a voter leave his old party, even though he be enrolled therein, and join a new party or body of voters within a year of his enrollment, and sign a petition for a nomination of an independent candidate? I think any legislation that prevents an American citizen from so doing is unreasonable and indefensible.

[7] And for the same reason the provision of section 123, which says "no person shall join in nominating more candidates for any one office than there are persons to be elected thereto, and no certificate

shall contain the names of more candidates for any office than there are persons to be elected to such office," is also invalid, if it is to be construed as prohibiting an elector who has participated in a party caucus from thereafter signing an independent nominating certificate. If, however, it is to be construed as limiting the right of an elector to the signing of but one nominating certificate (which I think is the meaning of the provision), it is a proper regulation and should be upheld.

[8] Section 123 also provides:

"The name of no person signing an independent certificate of nomination shall be counted, unless such person shall, on one of the dates of registration in such year, be registered as a qualified voter."

Here we have this situation: An independent nominating petition for county officers is required to bear the signatures of 1,500 qualified voters. Such certificate must be filed on or before the 11th day of October, which is the first of the four days for registration. Now, this law provides that the name of no person signing an independent certificate shall be counted, "unless such person shall, on one of the days of registration in such year, be registered as a qualified voter." The effect of this provision is that, after the filing of a perfectly good and sufficient nominating certificate containing the requisite 1,500 names, it may be rendered invalid and worthless by the failure of one or more of the 1,500 signers to register on one of the remaining days for registration. The certificate must be filed on or before the first day for registration. If thereafter, and when it is too late for the filing of a new certificate, death, sickness, or other disability should prevent some of the signers from registering, the whole certificate would fall, and no such independent nomination would or could be made. The mere statement of the proposition must demonstrate its unsoundness. That a certificate, valid when filed, can be vitiated by some unavoidable occurrence thereafter, is beyond all reason. Here, too, we have an unreasonable and unnecessary discrimination. Party nominations are not made void by failure of party nominators to register.

[9] The rule respecting independent nominations should be the same as that which applies to other nominations; i. e., that the nominators shall be, at the time the nominations are made, duly qualified electors and entitled to register and vote.

[10] I do not decide that the provision requiring 800 signers to nominate a member of assembly is unreasonable. The increase over the number required by the old law, which was in force for 15 or 16 years, is only 300, and Hamilton county, already referred to, which is the smallest county in the state, is joined with Fulton county as a single assembly district, while in the other assembly districts of the state the voting population may be large enough to justify requiring 800 signers.

My conclusions are that the provisions requiring 1,500 signers to nominate independent county officers, and striking from a nomination petition or certificate the name of an enrolled member of a political party, if that party nominates the same candidate, and striking from

the nominating certificate, already duly filed, the names of those who may not thereafter register, are unconstitutional and void, and are not to be regarded by the election board of Putnam county in receiving, filing, and acting upon independent nominating certificates.

I have not given the reasons for my conclusions more in detail because of lack of time. The papers and briefs were submitted at 3 o'clock this afternoon, and I promised a decision by to-morrow morning, which necessarily limits this opinion to quotations from the decisions, and conclusions therefrom and from the undisputed facts.

[11] It is of no consequence whether the defendant Smith voluntarily and knowingly made the affidavit annexed to the petition or not. It is to be presumed that, in the absence of directions to the contrary, the election board of which he is a member would follow the Election Law as it is, and require 1,500 signatures to an independent nominating certificate for county officers, and observe the other provisions of the law as to striking the names therefrom, etc. And for that reason it is proper that the relators should maintain this proceeding, to the end that they may know, prior to the last day for filing the nominating certificates, how many electors and who may sign such certificates, and that the election board may know what they are to receive, file, and act upon. The Hopper Cases, supra, seem ample authority for this present proceeding.

Motion granted to the extent indicated. Order to be settled at my chambers in Nyack, September 7th, at 10:30 a. m.