STATE EX REL. BENTLEY, and another, Plaintiffs, vs. HALL, Secretary of State, Defendant.

*October 5—October 7, 1922.*

*Elections: Primaries: Test of party strength: Reasonableness: Constitutionality.*

1. The requirement of ten per cent. or more of the vote cast for the nominee of a party for governor at the last general election to entitle a candidate at a primary to a place upon the party ticket, is not unreasonable. *State ex rel. McGrael v. Phelps,* 144 Wis. 1, followed.
2. It is clearly within the legislative field to reasonably regulate and restrict the right of suffrage; and the selection of the party vote for governor of the state as the test of party strength is clearly within such field.
3. The constitutionality of an act of the legislature cannot be tested by the evidence in a particular case, but the courts determine for themselves, upon the fundamental principles of the constitution, whether the act is valid or not.
      ESCHWEILER and JONES, JJ., dissent.

State ex rel. Bentley v. Hall, 178 Wis. 172.

MANDAMUS brought originally in this court to compel the defendant *Elmer S. Hall,* as secretary of state, to certify the names of the relators *A. A. Bentley* and *John M. Callahan,* candidates for Governor of this state and member of Congress from the Fifth Congressional district of this state, respectively, to be placed in the Democratic column on the official ballot to be used at the general state election to be held November 7, 1922, though the total vote cast for all Democratic candidates for the respective offices mentioned at the primary election held September 5, 1922, did not aggregate ten per cent. of the vote cast in the state and Congressional district named, respectively, for the Democratic nominee for Governor at the last general election, as required by sec. 5.17, Stats. 1921. An alternative writ of *mandamus* was issued out of this court and upon its return the defendant moved to quash the writ.

The statutory provisions involved are as follows:

"Sec. 5.17 *Determination of nominations made at primaries.* (1) If all candidates for nomination for any one office voted for on any party ballot shall receive in the aggregate ten per cent. or more of the vote cast for the nominee of such party for governor at the last general election, the person receiving the greatest number of votes at such primary election as the candidate of such party for such office, shall be the candidate of that party for such office, and his name as such candidate shall be placed on the official ballot at the following election.

"(2) If all the candidates for nomination for any one office voted for on any party ballot, shall receive in the aggregate less than ten per cent. of such votes so cast at such last general election, no person shall be deemed to be the party nominee for such office, but the person receiving the greatest number of votes at such primary as the candidate of such party for such office, shall be deemed an independent candidate for such office, and his name shall be placed on the official ballot in the column of individual nominations and he shall be denominated in such column as 'independent.'

"(3) But no person shall be entitled to have his name placed on such ballot who has not filed a nomination paper

as provided in sections 5.05 and 5.07 of the statutes, unless he shall have received at such primary election a number of votes not less than the number of signers required by sections 5.05 and 5.07 of the statutes for nomination papers, and shall have filed within five days after receiving official notice of his nomination, a declaration that he will qualify as such officer if elected.

"(4) The persons, equal in number to twice the number of persons to be elected to any office, receiving the highest vote for such office at any city primary, shall be the nominees for such office, and their names, and no others, shall be placed upon the official ballot at the ensuing city election in such city."

For the plaintiffs the cause was submitted on the brief of *M. L. Lueck* of Beaver Dam, *M. C. Riley* of Madison, *H. O. Wolfe, J. G. Hardgrove,* and *Frank T. Boesel* of Milwaukee, attorneys, and *B. R. Goggins* of Wisconsin Rapids and *T. M. Kearney* of Racine, of counsel.

A supplementary brief was also filed by *Mr. Hardgrove,* of counsel.

For the defendant the cause was submitted on the brief of the *Attorney General* and *Ralph M. Hoyt,* deputy attorney general.

The following opinion was filed November 8, 1922:

VINJE, C. J.    Counsel for plaintiffs state:

"The relators do not question the power of the legislature to regulate, within reasonable limitations, the nominations of candidates for public office; and they do not challenge the constitutionality of the primary election law in its entirety. They do contend that so much of sec. 5.17, Stats., as was inserted therein by ch. 477, Laws 1909, and subsequently amended, and as purports to deny the use of the party column to party candidates for any particular office when the total vote cast at the primary for all party candidates for the particular office does not equal ten per cent. of the vote cast for the nominee of such party for governor at the last general election, is unconstitutional and void . . . because violative of secs. 1 and 22 of art. I

and art. III of the constitution for the reasons that in its practical operation and effect it is (1) unreasonably restrictive of the right of suffrage; (2) class legislation."

They say that the ten per cent. clause is unduly restrictive because it makes the continued existence of a political party dependent upon a fluctuating, inconstant, arbitrary standard which is (a) not reasonably indicative of party strength and is (b) subject to influences brought to bear by forces without the party which result in violent fluctuations. Tables are presented of election statistics showing great fluctuations in the vote for governor both on the Democratic and Republican ticket for a series of years, and it is argued that the vote for governor is not a true test of party strength. A table showing the vote for President also shows large fluctuations, as well as votes for other state officials, and it is urged that in view of such fluctuations a vote for a given candidate should not be taken as a basis of party strength. It is also urged that where there is no contest in a party primary it is wrong to penalize it for not showing a ten per cent. vote.

These arguments and others were urged more or less strenuously in the case of *State ex rel. McGrael v. Phelps,* 144 Wis. 1, 128 N. W. 1041, and were treated in the opinion of the court. As the law then stood a twenty per cent. vote was required and it was held constitutional. That case rules the present one. The only really new argument here presented is that experience has shown that a party may fail to poll the necessary ten per cent. and hence the law is unduly restrictive, and the case of *State ex rel. Dorval v. Hamilton,* 20 N. Dak. 592, 129 N. W. 916, is relied upon to sustain the argument. The reasoning of the court in that case does not appeal to us. It is to the effect that the constitutionality of a law depends upon what has happened under it rather than upon a consideration of general principles applicable to the question. Were that so, then a law would be constitutional one day and the next it would be un-

constitutional because of the happening of an independent event. The constitutionality of laws does not depend upon such fortuitous circumstances. It is a well established principle of law that the constitutionality of an act cannot be tested by the evidence in the particular case. *State ex rel. Carnation M. P. Co. v. Emery, ante,* p. 147, 189 N. W. 571; *St. Louis v. Liessing,* 190 Mo. 464, 89 S. W. 611, 1 L. R. A. N. s. 918. In the latter case the court says:

"The constitutionality of the law is not to be determined upon a question of fact in each case, but the courts determine for themselves upon the fundamental principles of our constitution that the act of the legislature or municipal assembly is not to be declared void unless the violation of the constitution is so manifest as to leave no room for reasonable doubt."

This in the nature of things must be so else a law would be constitutional under the facts found in one case and unconstitutional under the facts found in another. Or it would be valid today but void tomorrow because of the happening of an extraneous event. If such a view should obtain, the statute in question has been constitutional since its enactment in 1909 and until the Democrats in 1922 failed to poll a ten per cent. vote at the primary when it became unconstitutional. Such a test of constitutionality is unthinkable. That in the course of time oft-repeated experience may modify the judicial view as to constitutionality of laws is apparent; but it should not and cannot be changed because of a few isolated instances. Besides, one may well query the utility or necessity of a law whose violation is not contemplated. The legislature in fixing the ten per cent. of the vote must have had in mind that it would at times be violated. If made so low that it would probably never be violated, then it would cease to be a regulation. It would be a mere superfluity.

It is not intended in this opinion to restate the position of the court in *State ex rel. McGrael v. Phelps,* 144 Wis. 1,

128 N. W. 1041, but only to briefly touch upon the new arguments advanced and to restate the principles that govern the case. These are (1) that it is clearly within the legislative field to reasonably regulate and restrict the right of suffrage; (2) that the selection of the vote for governor as the test of party strength is clearly within such field; and (3) that the requirement of a ten per cent. vote at a primary as a condition for securing a place upon the party ticket is not an unreasonable one for reasons stated in *State ex rel. McGrael v. Phelps,* 144 Wis. 1, 128 N. W. 1041.

*By the Court.*—The motion to quash the alternative writ of *mandamus* is granted.

ESCHWEILER, J. (*dissenting*). As now declared by the majority, the actual, practical result of the punitive feature grafted by ch. 477 of the Laws of 1909 on to the original primary election law created by ch. 451, Laws of 1903, then entitled "An act to *provide* for *party nominations by direct vote,*" is to destroy the effective right to and to annul the good-faith attempt of the Democratic party in this state to make an effectual *party nomination* by *direct vote.*

This punitive amendment, therefore, when thus put into effect is directly contrary to the expressed purpose of the act. It punishes, not the faithless or the inconstant of any particular party or those of other parties who overload such party at a preceding election, but rather those who have been steadfast in their party allegiance. It inflicts the penalty of either permanent or temporary party emasculation upon those who have striven to preserve party virility; verily a topsyturvy in the idea of penal statutes.

There are two things in this connection to which even a court cannot be blind: first, that there is no known method by which the bulk of the voters of a party can be held within its own ranks at all times, or to protect it from invasion by the members of other parties; and second, that if many with present or former Democratic affiliations voted the Repub-

lican ticket in this fall's primary election, thereby reducing the Democratic primary vote below the required ten per cent., yet it is also true and patently obvious that two years ago many Republicans voted for the then Democratic candidate for governor, thereby largely increasing the number of votes which makes the statutory basis upon which is to be computed the required percentage. No regulation within, nor statutory provisions without, political parties can prevent such practices, nor are either of such things by either party law or state law attempted. It would be a pitiful commentary on our electorate if we could not presume that some, at least, of such shifting in party ranks was done under the belief that the general good is better so served in the particular instance by such changes than by a blind and slavish adherence to party ties or fetishism. It cannot be within the reasonable purview of such regulation of party elections to introduce the fixity of the caste system in party politics in this country. An amendment to a law, therefore, such as the one here questioned, which effects a result directly contrary to the scope, purpose, and intent of the main act, should be held not germane thereto and unreasonable and therefore void. It amounts to a denial of the right. That, this court said in *State ex rel. Van Alstine v. Frear,* 142 Wis. 320, 341, 125 N. W. 961, the legislature cannot lawfully do.

This amendment should be held unreasonable and void for further reasons. It has neither justice, uniformity, nor equality in its classifications and treatment of the parties as such or of the individual voters.

It permits the Prohibition party, which has never had in this state to exceed 10,000 votes for its candidate for governor at any election during the last ten years and but 6,047 at the election of 1920, to now vote its separate party column designation, while the Democratic party, which cast over 19,000 votes in the gubernatorial contest in the primary

just held and over 200,000 votes for its candidate for governor in 1920, is denied such right.

Again, while the 19,000 voters in the Democratic primary just held are now disfranchised so far as party standing is concerned, yet if members of a new organization wished to have a column with a new party designation they would have had apparently needed, under sub. (6) (d), sec. 5.05, Stats., but one per cent. of the total vote at the election of 1920, that is less than 8,000. So the Prohibition party can float its party designation in its separately so designated column though polling less than 7,000 votes in 1920; a new party could have the same privilege if it had 8,000 votes so designated in 1920; yet the Democratic party, then casting over 200,000 votes and now over 19,000 votes, more than the total of such other two, is declared to be officially dead.

No valid reasons can be suggested why such permitted results are reasonable requirements or regulations either as to the parties as units or the individual voters concerned.

These objections-to this portion of the primary election law before us are not based upon any unthinkable proposition such as suggested in the majority opinion that this punitive amendment is like some shuttlecock betwixt the battledore of constitutionality at one election and the battledore of unconstitutionality at another; these objections are and were inherent and present at the time of the passage of the amendment and have remained there. That occasion has not oftener presented their unfairness and injustice in the application of them in concrete form adds neither force nor weight to any argument in their favor. These very features were discussed by the late Mr. Justice Timlin and Mr. Chief Justice Winslow in their dissenting opinions in the *McGrael Case,* 144 Wis. 1, at pp. 51, 54, 128 N. W. 1041. What those two Justices there said by way of argument and prophecy is now a demonstration. Similar views to those thus expressed were voiced by Bruce, C. J., speak-

ing for the court, in *State ex rel. Allen v. Flaherty*, 40 N. Dak. 487, 169 N. W. 93.

While political parties have their grievous faults they are nevertheless a recognized institution in this state and nation for permitting the sovereign will of the people to find legitimate expression in a democratic form of government.

Such right to party existence is still recognized, even though it may be, as to municipal affairs, taken away. *State ex rel. Binner v, Buer*, 174 Wis. 120, 130, 133, 182 N. W. 855. In this last cited case it should be noted, however, that all parties were alike treated to extinction in municipal affairs, and not as here where the ax falls upon but one party neck. Here a statute is being upheld which denies to one class of voters a right which is granted to other classes of lesser numbers. It is just the kind of an unwarranted tampering with a constitutional right as was declared in the case of *Hopper v. Britt*, 204 N. Y. 524, 532, 98 N. E. 86, to be invalid.

For the reasons above stated I cannot join in the prose requiem expressed in the majority opinion.

I am authorized to state that Mr. Justice Jones concurs with me in this dissent.