fendant in default, by tendering to him the bonds and stock before the commencement of the action.

We are of the opinion, therefore, that the judgment must be reversed, and a new trial granted, with costs to appellant to abide event. All concur.

---

### In re TERRY.

(Supreme Court, Appellate Division, Second Department.   October 31, 1911.)

1. ELECTIONS (§ 154*)—INDEPENDENT NOMINATIONS—CERTIFICATES OF NOMINATION—STATUTES.

The certificate of the notary and the affidavit, referred to in Election Law (Consol. Laws 1909, c. 17) § 123, as amended by Laws 1911, c. 649, declaring that the oath of the elector signing a nomination paper shall be proved by the certificate of the notary before whom the oath is taken, and that for the purpose of ascertaining whether a person, whose name appears on a nomination paper, signed it, his affidavit that he did not sign shall be prima facie evidence of that fact, are but prima facie evidence, and the issue of the sufficiency of a nomination paper must be judicially determined as authorized by section 125.

[Ed. Note.—For other cases, see Elections, Dec. Dig. § 154.*]

2. ELECTIONS (§ 120*)—NOMINATIONS—STATUTORY REGULATIONS—VALIDITY.

Election Law (Consol. Laws 1909, c. 17) § 123, as amended by Laws 1911, c. 649, providing that no separate sheet comprising an independent certificate of nomination shall be received if 5 per cent. of the names appearing thereon are forged, though construed as establishing a condition precedent, going to the validity of the certificate and providing that, if 5 per cent. of the names on a sheet are forged, the sheet must not be considered though the remaining 95 per cent. are genuine, is not in conflict with Const. art. 1, § 1, providing that no member of the state shall be disfranchised or deprived of any privileges secured to any citizen, etc., since the Legislature may regulate the right of suffrage and the right of candidates, so long as such regulations do not impair the rights of the electors, or unjustly discriminate in favor of one candidate as against another, or between electors in the facilities afforded them for casting their votes.

[Ed. Note.—For other cases, see Elections, Dec. Dig. § 120.*]

Appeal from Special Term, Kings County.

In the matter of the certificate nominating Edmund R. Terry, a member of Assembly in the First Assembly District, Kings County. From an order declaring the certificate invalid and directing the Board of Elections not to print Edmund R. Terry's name on the official ballot, Edmund R. Terry appeals.   Affirmed.

Argued before JENKS, P. J., and BURR, THOMAS, CARR, and WOODWARD, JJ.

William H. Griffin, William A. Shortt, and Edmund R. Terry, for appellant.

William W. Wingate, for respondent.

BURR, J.   On the 18th of October, 1911, there was presented to the custodian of primary records of the city of New York a paper purporting to be an independent certificate of nomination of Edmund

---

R. Terry, as member of Assembly for the First Assembly District of Kings County. The sufficiency, validity, and legality of this certificate were questioned by proper objections thereto, and the matter was brought to a hearing, before a Special Term of the Supreme Court, as provided in the election law (Consolidated Laws 1909, c. 17 [Laws 1909, c. 22] §§ 125, 134, as amended, Laws 1911, c. 649, § 2). To constitute a valid nomination for the office in question, the certificate must be subscribed by 500 or more voters or electors, "each of whom shall add to his signature his place of residence, and make oath that he is an elector, and has truly stated his residence," which oath shall be made before a notary or other officer authorized to administer oaths. Id. §§ 122, 123. The certificate in question consisted of 60 different sheets, upon which appeared 547 names. The court has found as a fact that upon 5 of said sheets, containing altogether 59 names, 5 per centum or more of the signatures appearing thereon were forgeries. As a conclusion of law, it has determined that these sheets should not be received or filed with the custodian of primary records. The court has found as a fact that upon a sixth sheet five persons whose names appear thereon were not sworn as the law required. As conclusion of law it has determined that these names should not be counted. If these 64 names are properly excluded, an insufficient number of names remain upon the certificate to constitute an effective nomination. From an order declaring the certificate insufficient and invalid and directing the board of elections not to print Terry's name upon the official ballot, this appeal is taken.

Section 123 of the election law, as amended, provides that:

"No separate sheet comprising an independent certificate of nomination, where such certificate consists of more than one sheet, shall be received and filed with the custodian of primary records if five per centum of the names appearing on such sheet are fraudulent or forged."

This provision of the act may be construed either as establishing a rule of evidence, or as containing a condition precedent to the receiving and filing of such a certificate. This section also declares that the making of the necessary oath by the elector "shall be proved by the certificate of the notary or other officer before whom the said oath is taken, and it shall be unnecessary for an elector who has subscribed a certificate of nomination, as herein provided, to sign any affidavit as to the matter to which he has made oath as aforesaid." Section 123. The officer administering the oath is required to certify that the elector personally came before him, that he was personally known to him, and known by him to be the elector whose name and place of residence is subscribed by him to the certificate, and that said elector made oath that he is an elector and has truly stated his residence, and that it is his intention to support at the polls the candidacy of the person nominated for public office in the said certificate. Id. § 123. It is further provided, in the same section, that:

"For the purpose of ascertaining whether the person whose name appears on an independent certificate of nomination signed such certificate, the affidavit or testimony of such person that he did not sign such certificate shall be prima facie evidence that he did not sign such certificate."

And in such case, for the purpose of ascertaining the truth with regard to this disputed fact, it is provided in section 125 that questions arising with regard to the "sufficiency, validity or legality of any such certificate" shall be judicially determined.

[1] It is clear that, although the certificate of the notary is referred to as "proof," and the affidavit denying the signature is referred to as "prima facie evidence," the same effect is to be given to each form of expression. Each shall be deemed prima facie but not conclusive evidence, since otherwise issues could not arise requiring judicial determination. If the language above quoted relative to those sheets of the certificate which contain more than 5 per centum of forged or fraudulent names shall be construed as establishing a rule of evidence, although it is not thus specifically declared, we think it would be within the spirit of the act to construe it as meaning that, when 5 per centum of the names appearing upon a given sheet are fraudulent or forged, the presumption arises that all of the remaining names upon that sheet are of the same character, but that presumption might be rebutted by proof that the other 95 per centum were genuine signatures of qualified electors who had made the necessary oath. The burden of proving this would of course be upon the party seeking to sustain the certificate. If this be the true construction of the act, then this order must be affirmed, because so far as this record discloses no attempt was made to furnish such evidence.

[2] But we prefer to put our decision upon a broader ground, and to hold that the provisions of the act now under consideration mean precisely what is said, and establish a condition precedent which goes to the validity of the certificate, and if 5 per centum of the names upon a given sheet are fraudulent and forged, notwithstanding the remaining 95 per centum thereof are genuine, such sheet shall not be considered a valid part of the nominating certificate. The appellant attacks the validity of the act thus construed as in violation of article 1, § 1, of the Constitution, to the effect that:

"No member of this state shall be disfranchised, or deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land, or the judgment of his peers."

That the Legislature has some power to regulate the manner of holding elections and to pass laws protecting the purity of the ballot and the manner in which nominations shall be made, so as to entitle the nominee to a place on the printed portion of the official ballot, is not debatable. And yet the effect of all such legislation may tend in some degree to impede the elector in the exercise of his franchise. For instance, it might be more convenient, particularly in the sparsely settled sections of the state, where voters are obliged to travel for a considerable distance to reach the polling place, if the law provided that at any time upon one or more specified days they should be permitted to cast their ballots. At one time this was the law. But at the present time we think that no one would contend that the law which limits the time for voting to a period between the hours of 6 o'clock in the forenoon and 5 o'clock in the afternoon upon a specified day is an unconstitutional limitation upon freedom of the franchise. It

perhaps would be less of a burden to the nominators if a smaller number of electors were required to place a candidate in nomination upon a certificate of independent nomination, or if a single request were sufficient to entitle such a candidate to a place upon the official ballot. Until the argument of this appeal we have never heard it suggested that the conditions imposed by the Legislature in these respects were in violation of the constitutional provision above referred to. To prevent improper voting, the Legislature have frequently passed laws intended to ascertain who shall be entitled to the right of suffrage, and' for the registration of voters. The only restriction upon their right so to do is that the proofs required shall be "proper proofs." Constitution, art. 2, § 4; In re Fraser (Court of Appeals) 96 N. E. 365. The test seems to be that laws of such a character regulating the exercise of the right of suffrage and regulating the rights of candidates to have their names placed upon the official ballot shall not be of such a character as *unreasonably* to impair the rights of the electors or injustly discriminate in favor of one candidate as against another, or between the electors in the facilities afforded them for casting their votes. In re Callahan, 200 N. Y. 59, 93 N. E. 262; Dapper v. Smith, 138 Mich. 104, 101 N. W. 60; In re Hopper (N. Y. Court of Appeals) 96 N. E. 371.

We deem the condition contained in the statute now under consideration to be reasonable in character. It is certainly in the interest of fairness, both to candidates and electors, that papers purporting to be independent certificates of nomination for public office shall not be received or filed unless honestly made. It would be unjust to the candidate who has faithfully complied with the provisions of the statute, and who has been placed in nomination by the requisite number of qualified electors whose signatures to the certificates of nomination are genuine, if another candidate whose certificate is false and fraudulent in respect to the genuineness of the signatures appearing thereon, or the qualifications of the signers, should be accorded the same rights and privileges upon the official ballot as the former. It would tend to embarrass and not to facilitate the electors if the official ballot, now sufficiently unwieldy, were further incumbered by the appearance thereon of the names of candidates whose certificates were the result of forgery and fraud. To insure honesty in this respect, the Legislature provided: First, that the requisite number of electors should subscribe the certificate; second, that each subscriber should add to his signature his place of residence, presumably as a means of identification; third, that he should make oath that he is an elector, and has truly stated his residence, and, in addition, that it is his intention to support at the polls the candidacy of the person named in such certificate. The notary whose certificate was made evidence of the facts stated therein was required not only to certify to such facts, but also that the person taking the oath *personally* came before him and was *personally* known to him, and known to be the elector whose name and place of residence appeared thereon.

It might be possible for the person securing the signature, or the notary or other officer who administered the oath to persons personally

known to him, to be mistaken or deceived in one or two instances; but the Legislature had the right to declare that, if so large a per-centage as 5 per centum of a given number of signatures should be ei-ther forged or fraudulent, either the person securing the signatures or the officer certifying to the facts was careless in the discharge of his duties, or an intelligent and willing participant in the guilty act.  The party securing the signatures (generally the notary) must be deemed the agent either of the electors making the nomination, or of the can-didate who is nominated.  In theory he is the agent of the former; as matter of fact, he is usually selected by the latter.  If an unworthy or dishonest agent has been selected, it is more fitting that the person making the selection should bear the penalty of his misdeeds than that the rights of other candidates should be impaired or those of the other electors hindered or impeded.  If the certificate is rejected, the voter is not thereby wholly disfranchised.  Those who desire to vote for the candidate named in the rejected certificate may still do so by writing his name in the blank space upon the official ballot.  Granted that this may not be quite so easy a method of voting as if the candidate's name appeared in print in another column, and under an appropriate em-blem, yet in the interests of a pure and honest election this is not too great a penalty to exact in order to prevent carelessness upon the part of those responsible for the certificate in selecting an incompetent or a dishonest and untrustworthy agent.

The order appealed from should be affirmed.

Order affirmed without costs.  All concur.