In the Matter of the Protest of WILLIAM H. BURKE,
Respondent, to the Board of Elections of the City of
New York, Respondent, against the Certificate Nomi-
nating EDMUND R. TERRY, Appellant, for Member of
Assembly in the First Assembly District of Kings
County.

Election Law — section 123 (as amended by L. 1911, ch. 649),
relating to the signing and filing of certificates of independent
nominations, construed and held to be constitutional.

The Election Law (Cons. Laws, ch. 17, as amended by L. 1911,
ch. 649) permits an independent certificate of nomination to be
made up of several different sheets. Section 123 provides that " The
signatures to the certificate of nomination need not all be appended
to one paper," and further that " No separate sheet comprising an
independent certificate of nomination, where such certificate con-
sists. of more than one sheet, shall be received and filed with the
custodian of primary records if five per centum of the names
appearing on such sheet are fraudulent or forged." *Held*, that the
latter provision may be upheld because independent nominators
are not constrained to subject themselves to its operation. They
may all sign a single sheet or each may sign a sheet by himself.
This liberty of action relieves the provision from any constitutional
objection.

*Matter of Terry*, 146 App. Div. 520, affirmed.

(Argued November 2, 1911; decided November 3, 1911.)

APPEAL from an order of the Appellate Division of the
Supreme Court in the second judicial department, entered
October 31, 1911, which affirmed an order of Special Term
declaring the certificate of the independent nomination
of Edmund R. Terry as candidate for member of assembly
from the first assembly district in the county of Kings to
be insufficient and invalid and enjoining and restraining
the board of elections of the city of New York from hav-
ing printed the name of the said Edmund R. Terry as
such candidate upon the official ballot.

*Edmund R. Terry* and *Theodore F. Kuper* for appellant.

*William W. Wingate* for William H. Burke, respondent.

*Archibald R. Watson, Corporation Counsel (James D. Bell* of counsel), for Board of Elections, respondent.

WILLARD BARTLETT, J. Section 1 of article 1 of the Constitution of the state of New York provides as follows: "No member of this State shall be disfranchised, or deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land, or the judgment of his peers."

It is contended on the present appeal that this prohibition of the Constitution has been violated by the action of the board of elections of the city of New York in denying to certain citizens the right to participate effectively in nominating Edmund R. Terry as an independent candidate for member of assembly from the first district of Kings county.

The Election Law (Cons. Laws ch. 17, as amended by L. 1911, ch. 649) permits an independent certificate of nomination to be made up of several different sheets. "The signatures to the certificate of nomination need not all be appended to one paper." (Election Law, § 123.) It is conceded that the citizens to whom we refer possess all the qualifications requisite to entitle them to join in executing an independent certificate of nomination; but it has been held by the courts below that the sheets upon which their signatures appear should be rejected and refused consideration by the board of elections under section 123 of the Election Law which provides that "no separate sheet comprising an independent certificate of nomination, where such certificate consists of more than one sheet, shall be received and filed with the custodian of primary records if five per centum of the names appear-

ing on such sheet are fraudulent or forged." The board of elections is the custodian of primary records in the city of New York.  (Election Law, § 202.)

The objection to the statutory provision invalidating every separate sheet of an independent certificate of nomination which bears five per cent of forged or fraudulent signatures is that it deprives the qualified signers thereof of all right to participate in the independent nomination which they desire to make, and this without the slightest element of wrongdoing on their part. They are made to lose this right simply because others over whom they have no control have done wrong. They are punished for an offense which others have committed and their candidate, who may be equally innocent, may consequently thus be debarred of the benefit of having his name printed upon the official ballot. That this is an injury to honest electors and an honest candidate there can be no doubt; but the question upon which the determination of this appeal depends is whether its effect on qualified signers of the rejected sheets amounts to disfranchisement under the Constitution.

The franchise of which no "member of this state" may be deprived is not only the right of citizens who possess the constitutional qualifications to vote for public officers at general and special elections, but it also includes the right to participate in the several methods established by law for the selection of candidates to be voted for. The legislature of this state in its wisdom decided some years ago to adopt an official ballot, to be printed at the public expense, upon which the voter indicates his preference by cross marks placed opposite the names of those candidates whose election he desires. In providing for such a ballot it was not only proper but necessary to prescribe the conditions which should entitle political parties and independent bodies of citizens to have the names of their nominees appear upon the ballot in print. It is argued that these conditions are wholly within the discretion of

the legislature and not subject to judicial review or control; but this proposition is subject to the qualification that no condition can be imposed which conflicts with the constitutional rights of electors, express or implied. We have recently held that one of these implied constitutional rights is equality of opportunity so far as practicable. The chief judge, speaking for a unanimous court in *Matter of Hopper* v. *Britt* (203 N. Y. 144, 151), said: "We think the constitutional provisions recited and the provision that certain officers shall be chosen by the electors necessarily further imply that every elector shall have the right to cast his vote with equal facility to that afforded to other voters, or, to speak more accurately, without unnecessary discrimination against him as to the manner of casting his vote." The same rule applies to the right to participate in making independent nominations. In prescribing reasonable rules regulating that right, the legislature may not unnecessarily discriminate against honest electors who without fault on their own part find that forged or fraudulent signatures have been attached to the certificate. If the Election Law absolutely nullified the honest signatures of qualified nominators in the case of a certificate of independent nomination, by reason of the presence of forged or fraudulent signatures thereon, a majority of the court would deem it unconstitutional to that extent; but it is only where such certificate consists of more than one sheet that the prescribed percentage of forged or fraudulent signatures has the effect of nullifying the honest signatures thereon. If the certificate consist of one sheet only, or if a separate sheet be provided for each signature, no such result could follow. It might be difficult, but it would not be impossible to resort to either of these methods. Hence the provision which is attacked in this proceeding does not necessarily operate to disfranchise electors desiring to participate in an independent nomination, who have done no wrong. By placing all the signa-

tures on one sheet or each signature on a sheet by itself
the effect of the provisions can be wholly avoided.

The Appellate Division was of the opinion that the
provision for the rejection of the sheets bearing. five per_
cent of forged or fraudulent signatures might be regarded
merely as the statutory establishment of a rule of pre-
sumptive evidence, leaving the independent candidate or
his friends at liberty to prove that the other signatures
were genuine, in which event it would be the duty of the
board of elections to treat them as effective.   The diffi-
culty with this view is that there is no warrant for it in
the language of the statute, which manifestly contem-
plates the absolute rejection of all separate sheets bear-
ing the specified percentage of forged or fraudulent sig-
natures.   Nor are we able to concur in the suggestion
that the person who obtains the signatures to a certificate
of independent nomination or the notary who takes the
acknowledgments is the agent of all the signers so as to
make those who are honest chargeable with his knowl-
edge that some of the signatures are forged or fraudu-
lent.   There is no presumption that any one knowing of
such wrongdoing would disclose it.   The presumption is
just the other way.

 Still another suggestion requires notice.   It is said that
no regulation which the legislature may see fit to impose
in respect to independent nominations can be subject
to any attack for invalidity under the Constitution,
inasmuch as the legislature need not have permitted
independent nominations to be printed upon the official
ballot at all.   To this view we are unable to assent.   The
framers of the Election Law which first provided for the
official ballot properly recognized the unquestionable fact
that it is a great practical advantage to political parties
and their candidates to have the names of the nominees
appear upon the ballot in print.   They also properly
recognized the possibility, which experience has proved to
be a probability not to say certainty, that large bodies of

citizens not constituting political parties might desire to unite in the effort to elect candidates of their own selection; and that these bodies might justly claim a place for their nominees in print upon the official ballot. This claim is so manifestly just and its recognition so essential to prevent that unconstitutional discrimination against the rights of electors which was condemned in the *Hopper Case* (*supra*) that we should regard any legislation as plainly invalid which allowed only the names of party candidates to be printed upon the official ballot, to the exclusion of candidates named by considerable bodies of citizens acting independently of party. If there were no provision for printing the names of independent candidates nominated by such bodies, the electors would be denied that equality of opportunity in the exercise of the right of suffrage which it is the aim of the Constitution to preserve.

It should be distinctly understood, therefore, that the provision invalidating separate sheets of an independent certificate of nomination by reason of the presence of five per cent of forged or fraudulent signatures thereon is not sustained on any such ground as this. We think it may be upheld because independent nominators are not constrained to subject themselves to its operation. They may all sign a single sheet or each may sign a sheet by himself. This liberty of action, we think, relieves the provision from any constitutional objection and, hence, requires an affirmance of the order under review.

The order should be affirmed, without costs.

CULLEN, Ch. J., GRAY and VANN, JJ., concur; HAIGHT, HISCOCK and COLLIN, JJ., concur in result.

Order affirmed.