In the Matter of the Applications of IRVING J. HIGBEE and Fourteen Others, Petitioners, for a Determination of the Court as to the Designation of THOMAS H. DIXON and Others for Public Office of State Senator, and as to the Designation of Others for Public Office or Party Positions, at the Democratic Primary Election, Respondents.

Supreme Court, Onondaga County, September 8, 1934.

*William H. Mitchell* [*Lawrence Olmsted* of counsel], for the petitioners in proceedings Nos. 1–14, inclusive.

*John J. Mahon,* assisted by counsel, for the respondents.

*John C. Smith,* for the petitioner Dominick Albino (proceeding No. 15).

No appearance for the respondent (proceeding No. 15).

*Edmund Port,* for the respondent Gertrude F. Alderman.

*A. F. Caffrey,* for the respondents Harold Aungier and another.

*Alexander S. Carlson,* member of the board, in person, for the board of elections.

DOWLING, J. On August 21, 1934, there was presented to and filed with the board of elections of the county of Onondaga, N. Y., petitions in the above proceedings purporting to designate the respondents as candidates for public office and party positions in the primary election to be held in said county September 13, 1934.

Petitioners challenge the sufficiency, validity and legality of said designating petitions and have instituted these proceedings for

an order declaring such petitions void and for their removal from the files of said board of elections and that the members constituting said board be directed to declare said designating petitions void and that they be restrained from printing the names of the respective candidates for public office and party positions therein mentioned upon the primary ballots.

Petitioners charge that the petitions are tainted with fraud, forgery and perjury; that they were altered after having been signed; that in some instances false certificates were attached to certain sheets of the petitions and that said petitions do not contain the number of valid signatures required by section 136 of the Election Law to entitle the candidates listed in said petitions to a place upon the primary ballots.

Respondents, except those for whom Mr. Port and Mr. Caffrey appear, deny the allegations of the petitions and move for dismissal of the various proceedings upon the following grounds:

1. That the court is without jurisdiction to entertain the said proceedings for the reason that Mr. Justice CREGG, who granted the orders to show cause herein, was disqualified under section 15 of the Judiciary Law, for the reason that his wife, son and daughter signed their names to certain petitions upon the regular Democratic slate and that his son is designated as candidate for delegate to the judicial convention to be held in the Fifth Judicial District on said slate.

2. That petitioners are not persons aggrieved or objectors within the provisions of section 330 of the Election Law.

3. That petitioners are limited in their attack to the form of petitions only and that the validity of the petitions as to form has been established by a decision of the County Court of the county of Onondaga.

4. That upon the face of the petitions, conceding the claims of the petitioners for the moment, there are sufficient valid signatures to entitle the names of the respondents to be placed upon the official primary ballots.

Mr. Justice CREGG has decided that he was not disqualified at the time he granted the orders to show cause herein. The court feels bound by his determination. This objection is overruled.

Petitioners are persons aggrieved as provided in section 330 of the Election Law and may maintain these proceedings. (*Matter of Terry*, 146 App. Div. 520, 525; affd., *sub nom. Matter of Burke* v. *Terry*, 203 N. Y. 293.) This objection is overruled.

Petitioners are not limited in their attack to the form of the petitions and the decision of the County Court of Onondaga county is not *res adjudicata* in these proceedings for the reason that the

parties generally are not identical and the subject-matter differs from that considered by the County Court. This objection is overruled.

Respondents maintain that only 500, or in any event 750, signatures are required to designate candidates for district attorney and State Senator, and for Member of Assembly only 250. The language of subdivision 2 of section 136 of the Election Law is obscure and confusing upon a hasty reading of same. The court is of the opinion that this section, applied to Onondaga county, requires candidates for State Senator and district attorney to procure 1,000 valid signatures and candidates for Member of Assembly and for position of delegate to judicial and State conventions and for membership in the State committee 250 valid signatures. The provisions for a less number of signatures for State Senator and district attorney do not apply to counties like Onondaga or to congressional districts such as the thirty-fifth, which includes Onondaga and Cortland counties. This objection is overruled and we come to a consideration of the merits.

The petitions do not comply as to form with section 135 of the Election Law so far as the offices of State Senator, district attorney and Member of Assembly are concerned. The preamble contains no declaration that the subscribers designate any candidate for public office. The declaration refers only to party positions. There is a very well-defined distinction between public office and party position. The term " party position " means membership in a party committee or the position of delegate or alternate to a party convention. (Election Law, § 2, subd. 9.) It is doubtful whether the insertion of the names of candidates for district attorney, State Senator and Member of Assembly below the declaration complies with the statute.

The court is convinced upon the proof before it that the so-called designating petitions in the first fourteen of the above-entitled proceedings do not contain a sufficient number of valid signatures to entitle the candidates therein mentioned to a place upon the official primary ballots for the primary to be held September 13, 1934.

It is conceded that the petitions were not printed until August 16, 1934, yet in hundreds of instances prior dates were inserted before the names of persons whose names were subscribed to said petitions. This was done without the knowledge or consent of the persons who signed same. The motive for this chicanery is obvious in the light of the language of subdivision 3 of section 136 of the Election Law, viz.: " *If an enrolled voter shall sign any petition or petitions designating a greater number of candidates for public office*

*or party position than the number of persons to be elected thereto his signatures, if they bear the same date, shall not be counted upon any petition, and if they bear different dates shall be counted in the order of their priority of date, for only so many designees as there are persons to be elected."*

Undoubtedly hundreds of names were signed to the petitions by someone without the knowledge or consent of the persons whose names were thus employed. In some instances the names of subscribing witnesses to the petitions were similarly attached. Many persons who signed the petitions did not appear before the notary or declare their intentions to the subscribing witnesses. The petitions generally are tainted with fraud and illegality. The evidence absolves the candidates from any connection with these vicious practices. It likewise discloses the guilty parties.

The petitions for State Senator and district attorney contain 1,146 names. Of this number, 684 are presumably valid. The petition for Member of Assembly in the first Assembly district contains 322 names. Of this number, 177 are presumably valid. The petition for Member of Assembly in the second Assembly district contains 466 signatures. Of this number, 225 are presumably valid. The petition for Member of Assembly in the third Assembly district contains 419 signatures. Of this number, 215 are presumably valid. These totals are subject to further deductions on account of dating the signatures before the petitions were printed and before the names of subscribers were placed thereon.

The statute requires 250 valid signatures on the designating petitions for the position of delegate or alternate to the State or district judicial conventions or for membership in the State committee. The candidates for these positions have not the required number of valid signatures to entitle them to a place upon the official ballot for the approaching primary. They are in the same position as candidates for Member of Assembly.

The conclusions heretofore reached dispose of the requests of respondents represented by Messrs. Port and Caffrey.

So far as proceeding No. 15 is concerned, the court finds the petition filed by Paul Maggio and Mrs. Roy Williams for member of county committee of the third election district of the third ward of the city of Syracuse has a sufficient number of valid signatures and was legally executed and the candidates thereon are entitled to a place on the primary ballot. The application to declare the same void is denied.

The court is conscious of the fact that reasonable latitude should be allowed in the procuring and filing of designating petitions. Swept aside is technicality, trifling error. Not so those practices

which shock the conscience and traverse the plain provisions of our statute law. Condemned they should be and condemned they are.

The petitioners in the first fourteen proceedings are entitled to an order quashing the petitions filed herein and restraining the board of elections of Onondaga county from placing the names of the respective candidates on the official ballot for the approaching primary. Proceeding No. 15 is dismissed. Enter orders accordingly.