In the Matter of FRANK C. MOORE, Appellant, against
MICHAEL F. WALSH, as Secretary of State of the State of
New York, Respondent.

Argued October 27, 1941; decided October 27, 1941.

*Kenneth S. MacAffer, Borden H. Mills* and *Herbert Brownell, Jr.*, for appellant. If the Election Law (Cons. Laws, ch. 17) is construed to prevent the filing of an independent nominating petition or certificate for the office of Comptroller of the State at the forthcoming general election, it is to that extent unconstitutional and void. (*Matter of Burke* v. *Terry*, 203 N. Y. 293; *Matter of Hopper* v. *Britt*, 203 N. Y. 144; 204 N. Y. 524; *People ex rel. Hotchkiss* v. *Smith*, 206 N. Y. 231; *Matter of Callahan*, 200 N. Y. 59; *Matter of Lauer* v. *Board of Elections*, 262 N. Y. 416.)

*John J. Bennett, Jr., Attorney-General* (*Henry Epstein* of counsel), for respondent. The determination made by the Secretary of State was proper. (*Matter of Mellon* v. *Board of Elections*, 262 N. Y. 422; *Matter of Peel* v. *Cohen*, 265 N. Y. 312.)

*Per Curiam.* The Election Law (Cons. Laws, ch. 17) is not open to any construction which would permit nominations by independent groups to fill vacancies described in section 131, subdivision 7. Since any statute which provides for an election where only political parties can make nominations is in violation of the State Constitution, the provisions of section 42 of the Public Officers Law (Cons. Laws, ch. 47) are to that extent void. (*Matter of Burke* v. *Terry*, 203 N. Y. 293.) It follows that no election for the office of Comptroller can be held this year.

The order should be affirmed, without costs.

CONWAY, J. (dissenting). This is a motion based on a petition seeking to direct the Secretary of State of the State of New York, respondent, to accept and file a certain " Independent Nominating Petition " containing over 28,000 signatures purporting to place in nomination for the office of State Comptroller to be filled at the general election to be held on November 4, 1941, one Frank C. Moore, who has also been nominated by the Republican Party. The name designated by the signatories to said petition as the name of the independent body is " City Fusion Party." The petition was presented to the Secretary of State on October 23, 1941, and he refused to accept it for filing, rendering a decision in writing giving his reasons for his refusal.

Nominations for the position of State Comptroller were made necessary by reason of the death of the Honorable Morris S. Tremaine on Sunday, October 12, 1941. By virtue of section 42 of Public Officers Law it became necessary to hold an election to fill the vacancy at the general election to be held on November 4, 1941. The political parties (Election Law, § 2, subd. 5), by their appropriate State committees, nominated candidates for the office in question on October 18th and 20th, respectively. Three days elapsed for the filing of objections to those nominations and none was filed. On October 23, 1941, the " Independent Nominating Petition," which is the subject of our inquiry, was presented for filing. To be valid it was necessary for the petition to contain 12,000 valid signatures and at least fifty of such signatures were required to be of residents of each county of the State, the counties of Fulton and Hamilton counting as one county. (Election Law, § 137, subd. 4.)

The sections of the Election Law to which attention must be particularly directed are sections 131, subdivision 7, and 140, subdivision 10.

Section 131, subdivision 7, reads as follows: " Party nominations. * * *

" 7. A party nomination of a candidate for election to fill a vacancy, occurring after the fifth Tuesday preceding the fall primary, in an elective office required to be filled at the next general election, if it be an office for which party nominations might otherwise be made at a fall primary or by a convention of delegates chosen at such a primary, shall be filled, after the day of such primary, by a majority vote of a quorum of the state committee, if the vacancy occur in an office to be filled by all the voters of the state, and otherwise by a majority of a quorum of the members of the county committee or committees last elected in the political subdivision in which such vacancy is to be filled or by such other committee as the rules of the party may provide."

Section 140, subdivision 10, as amended in 1929 (L. 1929, ch. 543) is as follows:

" 10. A certificate to fill a vacancy caused by declination of an independent nomination for an office to be filled at the time of a general election shall be filed not later than the sixth day after the fourth Tuesday preceding such election, and for an office to be filled at an election at a time other than that of a general election shall be filed not later than eight days preceding such election. If a vacancy described in subdivision seven of section one hundred and thirty-one occur too late to comply with the provisions of this section, the certificates of nomination, declination and to fill a vacancy in such nomination shall be filed as soon as practicable."

The argument of respondent comes to this: Section 131, subdivision 7, applies only to party nominations. Section 140 in its first seven subdivisions relates only to party nominations. Subdivisions 8, 9 and 10, respectively, contain provisions for the filing of a petition for an independent nomination, for the filing of a certificate of declination of an independent nomination and for the filing of a certificate to fill a vacancy caused by declination of an independent nomination. Subdivision 8 provides that a petition for an independent nomination shall be filed not earlier than the

fifth Tuesday and not later than the fourth Tuesday preceding the general election. This year such latest date for filing would have been October 7, 1941. It is thus argued that section 131, subdivision 7, refers only to party nominations and that the last sentence of section 140, subdivision 10, is applicable only to nominations by political parties. This reasoning results in the contention of respondent that if a vacancy occur between October 7th and October 15th (Public Officers Law, § 42), the Legislature intended that the vacancy so occurring could be filled only by a political party and not by an independent nominating petition of an independent body, defined in Election Law, section 2, subdivision 11.

The deduction as to such legislative intent is claimed to be shown not only by the language employed but by the development historically of the Election Law prior to the amendments of 1922, by the amendments of that year and the necessity of permitting time for inspection of independent nominating petitions.

The difficulty with this position is that the Legislature may not under the New York State Constitution deny the right to make independent nominations and confine nominations to those of political parties. (*Matter of Burke* v. *Terry*, 203 N. Y. 293; *Matter of Callahan*, 200 N. Y. 59.)

It may be that the Legislature could in certain *emergencies* restrict nominations to political parties in order to prevent the disruption of election machinery. It seems to us, however, in view of the New York State Constitution and our decision in *Matter of Burke* v. *Terry* (*supra*), that if the Legislature envisioned an emergency it would have made explicit provision to cover it and not have left it to be implied by construction and interpretation of various sections of the Election Law. More likely is it that the claimed emergency was not foreseen. Whether the independent nominating petition was filed on October 7th or October 23rd, there would be but three days to file objections except in one instance not here presented and the claim that the Legislature intended to provide that if a vacancy occurred

between October 7 and October 15 there should be no independent nominating petition filed because of the necessity for reasonable opportunity for investigation, checking and filing objections to such petition and for that reason alone forbade the filing of independent nominating petitions, would appear to be unjustified. We are more inclined to believe that this so-called emergency was not foreseen, by reason of the amendment to section 140, subdivision 10, in 1929. Up to that time the last sentence of that subdivision had been a separate paragraph and it might then have been urged with more weight that that sentence, comprising as it did a separate paragraph, would bear the interpretation now put upon it. In 1929, however, the Legislature placed that sentence within subdivision 10 of the section and no longer made it a separate paragraph. Reading that section as it stands to-day, subdivision 10, which provides for the filling of a vacancy caused by declination of an independent nomination such as the one for State Comptroller, refers in terms to subdivision 7 of section 131. That which is referred to is a " vacancy *described* " in section 131, subdivision 7. In view of the doubtful or ambiguous meaning which may now be ascribed to section 140, subdivision 10, it seems impossible to say that the Legislature by *implication* meant that subdivision 7 of section 131 should not be applicable to subdivision 10 which *expressly* refers to it.

We have, therefore, reached the conclusion that independent nominating petitions may be filed for a vacancy occurring between October 7th and October 15th in the absence of clear legislative enactment to the contrary. No doubt if an independent nominating petition should be filed so close to the date of the election that a fraud would be perpetrated upon the electorate, the court, under the summary jurisdiction conferred by Election Law, section 330, would have the power, and it would be its duty, to declare that the filing of the petition had not been accomplished " as soon as practicable." We do not find such a situation disclosed here despite the fact that absentee ballots have

already been mailed nor by reason of the fact that the Secretary of State has certified the nominees for the office of State Comptroller to the Boards of Election throughout the State.

It is further urged that the name " City Fusion Party," the name chosen by the group of voters seeking to nominate for the office of State Comptroller by the independent nominating petition in question, is a name already in use by another independent group of voters in New York city for nominations for city officers in the same general election of November 4, 1941. Nevertheless, the action of a State-wide group in using the name " City Fusion Party " is clearly permissible. In the case of *Matter of Peel* v. *Cohen* (265 N. Y. 312) Chief Judge POUND said (at p. 317): " The views of the eminent jurist, as fully and carefully expressed, are entitled to great respect, but it remains the law, as laid down by the majority of the court, that the required number of voters making a nomination for the office may adopt a name and emblem which other voters have adopted in order to nominate candidates for other offices without thereby adopting for themselves the general declaration of principles of such independent party or nominating a candidate in sympathy therewith. (*Matter of Trosk* v. *Cohen*, 262 N. Y. 430; *Matter of Straus*, 265 N. Y. 600.) "

Whether the individual candidate shall or shall not accept the nomination under the circumstances is not a question of law but one of individual judgment. It is not a legal reason for refusing to accept and file the petition. We do not pass upon the question whether the State-wide independent body as distinguished from the city independent body is entitled to a different ballot line separate from the local candidates named by the local independent body for city offices. It is not before us.

The order of the Appellate Division should be reversed.

LEHMAN, Ch. J., LOUGHRAN, RIPPEY and DESMOND, JJ., concur in opinion *Per Curiam;* CONWAY, J., dissents in opinion in which FINCH and LEWIS, JJ., concur.

Order affirmed.