In the Matter of Convention Nominations Certified by the AMERICAN LABOR PARTY.

WALTER J. FLANAGAN, Petitioner; THOMAS J. CURRAN, as Secretary of State, et al., Respondents.

Supreme Court, Special Term, Albany County, September 5, 1944.

*John J. O'Connor* and *Herman P. Greene* for petitioner.

*Morris Zuckman* and *Allen Goodwin* for American Labor Party, respondent.

*Nathaniel L. Goldstein, Attorney-General (John R. Davison* of counsel), for Thomas J. Curran, as Secretary of State, respondent.

BERGAN, J. Petitioner moves for an order restraining the Secretary of State from certifying to the several boards of elections of the State the names of Franklin D. Roosevelt and Harry S. Truman as the designees of the American Labor Party for candidates for President and Vice-President of the United States, to be printed on the voting machines and ballots in connection with the list of presidential electors nominated by the party.

It is conceded that the party may nominate presidential electors, as it has done, by its State committee (Election Law, § 131, subd. 1). But the argument is that the State committee may not express the choice of a political party for President and Vice-President of the United States and that its choice of electors does not entitle the names of presidential and vice-presidential candidates selected by the State committee to appear on the voting machines or ballots in connection with the electors.

The choice of electors properly is with the State committee, but, so it is further contended, the choice of the candidates for President and Vice-President is to be expressed for a political party only by the delegates elected to a national convention, since section 21 of the Election Law seems to require the election of such delegates.

The Convention of 1787 which framed the United States Constitution did not leave the selection of President and Vice-President to direct popular choice. The selection was to be made by an electoral college. And, indeed, the selection of the electors themselves was not required to be by direct popular choice. " Each state " was required to " appoint " a number of electors (U. S. Const., art. II, § 1). The people of the State were not required to " elect," but the " state " was required to " appoint." The manner of appointment was to be as the Legislature should direct.

The committee of the Convention which drafted the language of the Constitution in its final form demonstrated a singular capacity for precise use of language. Its draftsmen were men of consummate skill in the expression of terms of law and of government. They have had many imitators in many languages by the founders of many governments, and in some substantial part, the success of the Constitution as an instrument of government has been due to the form in which the lawyers who were its draftsmen expressed in words the will of the Convention.

When they used the word " appoint " as they did in the case of the presidential electors, and again as they did in the case of ambassadors, the judges of the Supreme Court and other officers of the United States (U. S. Const., art. II, § 2), they meant something quite different from the words " chosen by the people " in the case of members of the House of Representatives (U. S. Const., art. I, § 2). It seems to have been the initial impression of this language before the development of political parties that " appointment " of electors by the States be taken literally. The first statutory expression on the subject of presidential electors in New York was chapter 72 of the Laws of 1792, which was " An Act for appointing Electors in this State, for the Election of a President and Vice-President of the United States of America."

This Act provided that presidential electors be appointed in the manner provided by the New York Constitution for the appointment of delegates in the then general Congress. The reference was to the New York Constitution of 1777 (art. XXX) which provided for the selection of delegates to the general Congress under the Articles of Confederation by a joint session

of the Senate and Assembly. So the presidential electors of 1792 were " appointed " by a joint session of the New York Legislature. But the seed of subsequent political development in New York appeared in this first Act. The Legislature was to appoint the electors in 1792 because the time fixed by Congress " is too short to admit of their being chosen by the people of this state " (preamble of the Act). Nevertheless the process of evolution toward direct popular choice was slow, and the arrangement of·1792 continued for some time. (See L. 1796, ch. 32.)

As the political parties took shape and began to play an increasingly important part in American government, the selection of electors came to rest with the people of the States under the constitutional power of the Legislatures to provide for the " manner " of their appointment, a process which was recognized by indirection in the Fourteenth Amendment to the United States Constitution.

And since the election of public officers who have only one function to execute, the selection of a President and Vice-President of the United States, is in the nature of things inseparable from the object of their election, the merger and solidification of the process became a part of the political growth and development of the United States. In selecting electors people naturally thought of whom the electors would choose as President. They were not interested greatly in the personnel of the electors; but they were vitally interested in the selection of the head of the government. And since the electors soon became responsible directly to the people, their single public function became responsive to the public will and the people, in reality, " elected " the President of the United States.

The constitutional detachment of presidential selection from popular will was in this manner reshaped in a more democratic mold. But public will in a democracy cannot function without political leadership of some kind. And so complicated a system as that provided by the electoral college could not be bent to the democratic will except through the mechanism of cohesive political parties offering as candidates for electors men committed in advance to support for President the choice of the party. If the people were to choose a President it became necessary to know with certainty for whom the electors would vote. The adherence to pre-election commitments of presidential electors in support of the choice of " the party " for President became the strongest political tradition in the United States. Its universal acceptance by all political parties is the foundation of the expression of popular will in national elections.

It is as deeply imbedded in our national life as the unwritten constitution of England. In this process the significance of the electors became atrophied; their function became a matter of form, though no doubt they retain the legal right to exercise an independent judgment.

The discussion of the background leads to a consideration of what the Legislature intended when it provided in the case of presidential electors that the names of candidates for President and Vice-President "of such party" appear on the voting machine (Election Law, § 249, subd. 1). This clearly meant any political party capable of nominating electors is competent to express on the voting machine or ballot its choice for President and Vice-President.

The Legislature has from time to time regulated the internal affairs of political parties in New York, providing for means of participation by the members of a party in its government, and it has provided by section 21 of the Election Law for the election of delegates to a national convention. But there is no requirement of law that there be a national convention, and if none is held by a party, it may nevertheless have a choice of President and Vice-President and offer to the people electors for the purpose of winning support for its choice. The choice may be made as the rules of the party provide, which obtain except in actual conflict with statute.

Therefore, when a selection of the party's candidate for President and Vice-President is permissible under the rules of a party by its State committee, and the party is entitled by law to nominate presidential electors, and it holds no national convention, the provisions of law must be liberally construed in favor of its designation of the "candidates of such party" on the voting machine and ballot. The development of the political tradition of designating the party choice for the benefit of the voter is so well integrated in practice that knowledge of the choice of the party supporting the electors is a necessity to intelligent voting and the failure to designate such a choice would render the nomination of electors almost meaningless. Such a result would not be allowed unless the statute plainly could be read to require it, and it cannot be so read. Moreover, if some political parties could designate their choice of national candidates on the ballot, and others which reached their choice by means other than a national convention, could not, it may be doubted that the limitation would be consistent with the New York Constitution. (*Matter of Moore* v. *Walsh*, 286 N. Y. 552.)

Petition dismissed. The injunction against the Secretary of State is dissolved. Submit order.