In the Matter of Syndia Buchanan et al., Appellants, v Pedro G. Espada et al., Respondents. In the Matter of Pedro G. Espada, Respondent, v Madeline Fernandez et al., Appellants. [646 NYS2d 680] —Judgment of the Supreme Court, Bronx County (John P. Collins, J.), entered August 16, 1996, which confirmed the report of a Special Referee and dismissed an application to invalidate a petition designating respondent Espada as a candidate for public office of State Assemblyman, 75th Assembly District, in the Democratic Party Primary Election to be held on September 10, 1996, and which dismissed as academic a cross-petition to validate, unanimously reversed, on the law and the facts, without costs, the application granted, the designating petition invalidated, and the cross-petition to validate denied.

Respondent Pedro G. Espada submitted a two-volume designating petition (volumes 68 and 72) purported to contain 4,267 signatures. Pursuant to objections filed with the Board of Elections, 2,593 signatures were found to be invalid, leaving 1,674 valid signatures according to the Clerk's Report. The report of the Special Referee designated by Supreme Court reduced this total to 1,107, including the striking of 529 signatures for fraud resulting from the material alteration of the statements of subscribing witnesses. According to the report, "These alterations were comprised not simply of a line drawn through certain writing but rather were of major ink markings evidently designed to totally blot out and make unreadable the underlying information."

It is apparent from the report of the Special Referee, who heard some 30 witnesses testify that they were not the alleged subscribing witnesses appearing on the designating petition, that entries made by the subscribing witnesses were obliterated and the signatures of other subscribing witnesses

substituted therefor. However, despite the extent of the invalidity of the signatures, amounting to some 74% of those represented to be contained in the petition, and despite the extent of the fraud in witnessing the signatures, amounting to 70 of the petition's 325 sheets (more than 21%), the Special Referee concluded that "the petitioners to invalidate have failed to prove their fraud case", stating that they "failed to establish that candidate Espada had any knowledge of, or had participated in, any allegedly fraudulent activity relating to his designating petition." In confirming the report, Supreme Court concurred in this finding and, noting that only 500 signatures are required on the designating petition of an Assembly candidate, found that respondent submitted a sufficient number of valid signatures to have his name placed on the ballot.

While the number of remaining valid signatures might be numerically sufficient, we find that "because of its magnitude, fraud and irregularity so 'permeated' the petition as a whole as to call for its invalidation" (Matter of Proskin v May, 40 NY2d 829, 830; Matter of Aronson v Power, 22 NY2d 759; cf., Matter of Ferraro v McNab, 60 NY2d 601). It is recognized that "[t]he law allows a very limited time for checking of such petitions by opposing candidates * * * It follows therefore as a practical matter that the court may weigh the credibility of the subscribing witnesses [who solicited signatures] * * * and where the court finds misrepresentations in numerous instances, as it finds here, and nothing is offered in rebuttal, it may well indulge in the presumption that there were many other misrepresentations and irregularities which time did not permit to be uncovered" (Bloom v Power, 21 Misc 2d 885, 892, affd 9 AD2d 626, affd 6 NY2d 1001).

We note that fraudulent alteration was involved in 70 invalidated signature sheets subscribed by ten different witnesses. Of these, 36 were subscribed by Jeanette Torres, the fianceé of respondent Pedro G. Espada. The Special Referee found her testimony "to be almost totally lacking in credibility" and noted that "[h]er explanation as to the cross-outs or obliterations which appear on 28 of her sheets was simply beyond belief." He also found that her testimony that her fianceé remained totally unaware of her participation in his campaign to be "completely contradicted" by testimony given by the candidate himself, whom he regarded as "a credible witness."

Despite the numerical sufficiency of valid signatures on a designating petition, where the evidence establishes that the petition is "the product of knowing, systematic acceptance of

purported signatures of innumerable persons subscribed by others, thus constituting permeating fraudulent representation", it will be invalidated *(Matter of Lerner v Power,* 22 NY2d 767, 768). As set forth in *Bloom v Power (supra,* at 893), where "the candidate elected to submit a petition upon which he knew or had every reason to know were * * * many signatures which were invalid * * * by his own act, he has forfeited his right to a place on the ballot".

The report of the Special Referee recites, "Mr. Espada testified that he had absolutely no involvement in the petition-gathering process and does not know who had coordinated this effort." Even if this Court were to accept at face value that a candidate would not concern himself to ascertain the identity of the person entrusted with the crucial task of assembling his designating petition, which we do not accept, this testimony is rendered incredible by the candidate's acknowledgement that "he had been present at a party on Wednesday July 10, 1996, at which the petition sheets had been bound." The Special Referee's report states that also in attendance were his fianceé as well as his attorney who, the candidate concedes "provided instructions to those present and appeared to be 'running the show'." We therefore hold that Supreme Court's adoption of the Special Referee's finding that Mr. Espada was unaware of permeating fraud and irregularity to be contradicted by the credible evidence of record *(see, Matter of Ruiz v McKenna,* 40 NY2d 815; *Matter of Mercorella v Benza,* 37 NY2d 792).

This Court is mindful that those "who obtain signatures to designating petitions are not the agents of all of the signers so as to make those who are honest chargeable with knowledge that some of the signatures are forged or fraudulent" *(Matter of Lefkowitz v Cohen,* 262 App Div 452, 454 [citing *Matter of Burke v Terry,* 203 NY 293, 297], *affd* 286 NY 499). Therefore, the petition process should be construed liberally to avoid penalizing either the valid signatories or the candidate where it is "specifically found that there was no knowledge of the infirmities (and hence also no participation) on the part of the candidate" *(Matter of Proskin v May, supra,* at 831 [Cooke, J., dissenting]). However, it is not enough that the candidate simply profess ignorance regarding both the identity of the persons responsible for amassing the requisite signatures or the procedures employed to obtain them. Even if this Court could accept Supreme Court's finding "with respect to the candidate's noninvolvement in the permeating fraud and irregularity", it would nevertheless be "insufficient to resuscitate this petition" *(Matter of Proskin v May, supra,* at 830). The rec-

ord on appeal simply does not support "a finding that in no way, by action or omission to act, could the candidate be said to be responsible for the fraud and irregularity" *(supra,* at 830). The most that can be said is that the candidate chose to ignore the fraud and irregularity that permeated the petitioning process. Thus, the Court concludes that the candidate "knew or had every reason to know" that many of the signatures contained in his designating petition were fraudulent *(Bloom v Power,* 21 Misc 2d, *supra,* at 893). Concur—Rubin, J. P., Williams, Tom, Mazzarelli and Andrias, JJ.