Matter of Ferreyra v Arroyo (2020 NY Slip Op 02901)





Matter of Ferreyra v Arroyo


2020 NY Slip Op 02901


Decided on May 14, 2020


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on May 14, 2020

Acosta, P.J, Richter, Mazzarelli, Gesmer, JJ.


11605 260201/2020

[*1] In re Ramona Ferreyra, Petitioner-Appellant, Amanda N. Septimo, Petitioner-Appellant,
v
Carmen E. Arroyo, Respondent-Respondent, The Board of Elections in the City of New York, Respondent.


Lichten & Bright, P.C., New York (Daniel R. Bright of counsel), for appellants.
Stanley Kalmon Schlein, Bronx, and Law Offices of Edmond J. Pryor, Bronx (Edmond J. Pryor of counsel), for Carmen E. Arroyo, respondent.



Order, Supreme Court, Bronx County (John W. Carter, J.), entered on or about May 5, 2020, which confirmed the report of a Referee recommending the denial of petitioners' request for an order pursuant to article 16 of the Election Law declaring invalid the candidacy of respondent Carmen E. Arroyo for election to the State Assembly from the 84th Assembly District in the Bronx, affirmed, without costs.
The basis of petitioners' objection to the nominating petitions submitted by respondent Arroyo was that, although the campaign did not obtain blank petition sheets from their printer until February 27, 2020, 333 of the 576 signatures deemed valid by the Board of Elections were dated February 25 or February 26; that is, that the signatures were improperly backdated. Petitioners concede that, even if those signatures were to be discarded, there would still be over 240 properly dated signatures. This number crosses the threshold of 150 required under the amendments to the Election Law embodied in the Governor's Executive Order 202.2, issued on March 14, 2020. Nevertheless, petitioners argue that all of the nominating petitions should be invalidated as being hopelessly permeated with fraud.
A finding that a candidate's petition is permeated with fraud must be established by clear and convincing evidence (see Matter of Robinson v Edwards, 54 AD3d 682, 683-684 [2d Dept 2008]). Petitioners had that burden and did not satisfy it. Importantly, there is no allegation that the signatures in question were themselves forged or otherwise improperly secured. In fact, it was conceded that they were not. As for the claim that many of the dates were backdated, for an improper purpose, there is a dearth of evidence to support it. Certainly, there is no evidence meeting the clear and convincing standard. Before the Referee, petitioners did not present a single witness. We defer to the court's finding that the documentary evidence, which consisted largely of the records before the Board of Elections and the affidavit of a representative of the printing company, was insufficient to establish that respondent intended to commit a fraud. We further find that petitioners elicited insufficient proof to establish that the candidate herself was involved in any fraud.
We reject petitioners' argument that there is a sufficient basis to overturn the Referee's refusal to admit as evidence, under the declaration against interest exception to the hearsay rule, a conversation between petitioner Septimo and one of the subscribing witnesses. That person, who never appeared at the Referee's hearing, allegedly stated that he was instructed to leave blank the [*2]spaces next to the signatures at issue where the date of signature was supposed to be entered.
The dissent posits that petitioners' failure to produce any witnesses was not fatal to their ability to have shifted the burden at the hearing to respondent. Indeed, the Court of Appeals in Matter of Aronson v Power (22 NY2d 759 [1968]) reversed this Court's holding that the petitioner did not shift the burden on a claim of fraud (Matter of Aronson v Power, 30 AD2d 651 [1st Dept 1968]), even though the petitioner was unable to secure the testimony of material witnesses. However, in that case the Appellate Division made reference to actual "instances of fraudulent practices" having been established by the petitioners (30 AD2d at 651). Here, one must resort to sheer speculation to conclude that there was a pattern of fraud.
We have considered petitioners' remaining arguments and find them unavailing.
All concur except Gesmer, J. who dissents in a memorandum as follows:




GESMER, J. (dissenting)


I respectfully dissent. The record before us demonstrates that respondent Arroyo submitted a designating petition that is permeated with fraud and irregularities (Matter of Proskin v May, 40 NY2d 829, 830 [1976]), knowledge of which can be charged to her [FN1]. Accordingly, I would reverse and grant the petition to invalidate respondent candidate's designating petition.
Signatures on designating petitions are required to be dated and subscribed (Election Law § 6-132). "The substantive requirements of section 6-132 are designed to facilitate the discovery of irregularities or fraud in designation petitions,'" and strict compliance is therefore required (Matter of Alamo v Black, 51 NY2d 716, 717 [1980] [invalidating petition where witness statement failed to declare that the signatories signed on the dates indicated], quoting Matter of Rutter v Coveney, 38 NY2d 993, 994 [1976]). Here, respondent candidate concedes that she did not obtain the blank petition sheets from the printer until February 27, 2020. Nonetheless, on 41 of the 78 pages she submitted to the Board of Elections, the signatures were all dated February 25 or 26. Therefore, 512 out of 944 signatures submitted in the petition are backdated to dates preceding the candidate's receipt of the blank petition pages. Furthermore, 14 of the 28 subscribing witnesses, including the candidate's chief of staff, swore that signatures dated February 25 or 26 were placed on the petition in their presence on those dates. Therefore, each of those statements was materially false. Indeed, her chief of staff swore to nine backdated petition pages, one of which included the signature of the candidate herself. Significantly, the Board disqualified all but 576 of the signatures, which the candidate does not contest. Of the 576 not disqualified, 333 were backdated.
The remaining 243 signatures are not questioned, which exceeds the 150 required this year. Nevertheless, it is my view that petitioners have made out a prima facie case that the extent of the backdating, the flagrancy of the violation of the election law, and the participation of the candidate and her chief of staff establishes that the designating petition was so permeated with fraud that the candidate should be disqualified (Matter of Buchanan v Espada, 230 AD2d 676, 677 [1st Dept 1996], affd 88 NY2d 973 [1996]; Matter of Tapper v Sampel, 54 AD3d 435, 436 [*3](2d Dept 2008], lv denied 11 NY3d 701 [2008]).[FN2]
In response, respondent candidate failed to offer any explanation for the backdated signatures and false statements by subscribing witnesses. She neither submitted any affidavits in opposition to the petition, nor sought to call any witnesses. Supreme Court found that the number of backdated signatures was "significant," and that the irregularities were "troublesome." It nevertheless denied the petition. I would reverse since there is no reasonable view of the record that can lead to any other conclusion than that the magnitude of backdated signatures, including the candidate's own, and the large number of false subscribing witness statements, including that of the candidate's chief of staff, were the result of intent [FN3]. This is not, as the majority states, speculation; rather it is the only logical inference to be drawn from the documentary evidence [FN4]. Certainly, if there were errors as to dates on a few petitions, it could be chalked up to human error. But it is difficult to imagine any scenario under which mere human error could account for more than half of the petitions being backdated and falsely sworn as to the date on which the signatures were collected. Given the brief and crucial timeframe for gathering signatures, it is virtually impossible to infer that respondent candidate and her chief of staff were unaware of the dates when the candidate signed and her chief of staff witnessed signatures, including the candidate's own signature. This is a case in which there was no testimonial evidence, and the documentary evidence before us is all that Supreme Court considered [FN5]. Our obligation to evaluate the evidence in the record before us permits us to use [*4]common sense and to recognize that a pattern of false statements this flagrant could not be the result of anything other than intent.
I respectfully dissent.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: MAY 14, 2020
CLERK



Footnotes

Footnote 1:In my view, the record shows that knowledge of the fraud and irregularity in this case is chargeable to respondent candidate. However, I note that, in Proskin, the Court of Appeals affirmed Supreme Court's invalidation of a designating petition permeated with fraud, in which more than half of the signatures were improper but the remaining number of valid signatures exceeded the required number, even where Supreme Court specifically found that the candidate had no personal knowledge of the fraud (Proskin, 40 NY2d at 830).

Footnote 2:In reaching this conclusion, I rely only on the documentary evidence. I agree with the majority that the motion court properly refused to consider the testimony of petitioner Septimo concerning her conversation with one of the subscribing witnesses.

Footnote 3:As petitioners point out, an incentive for backdating signatures can be found in Election Law § 6-134(3), which provides that, if a person signs two candidates' designating petitions on two different dates within the narrow time period for collecting signatures, the second-dated signature is not valid. Here, the statutory period for gathering signatures commenced on February 25, 2020 (New York State Board of Elections 2020 Political Calendar, available at
https://www.elections.ny.gov/NYSBOE/law/2020Politica1Calendar0421.pdf. [last accessed May 13, 2020]). As petitioners' counsel noted at oral argument, the record contains 35 signatures dated February 25 or 26 on respondent candidate's petition by individuals who also signed the designating petition of petitioner Septimo.

Footnote 4: I disagree with the majority that we must defer to the findings of the motion court. The Appellate Division's "authority is as broad as that of the trial court," and deference is not warranted where, as here, the facts do not depend on the trial court's findings as to the credibility of witnesses (DiLorenzo v Windermere Owners LLC, 174 AD3d 102, 107 [1st Dept 2019] [internal quotation marks omitted]).

Footnote 5:Respondent candidate's argument that the lack of testimonial evidence precludes a finding that the designating petition is so permeated with fraud as to be invalid is contrary to governing case law. Specifically, the Court of Appeals affirmed Supreme Court's invalidation of a designating petition on this basis even where, as here, petitioner was unable "to secure the attendance of material witnesses" (Aronson v Power, 30 AD2d 651, 651 [1st Dept 1968], revd, 22 NY2d 759 [1968]).