In the Matter of George W. Thompson et al., Petitioners, against S. Howard Cohen, et al., Constituting the Board of Elections of the City of New York, et al., Respondents.

Supreme Court, Special Term, New York County, July 24, 1942.

*Henry Silverman* (*Benjamin Gassman* of counsel), for petitioners.

*William C. Chanler, Corporation Counsel* (*Russell L. Tarbox* of counsel), for the board of elections of city of New York.

*James B. M. McNally* for James P. Ryan, respondent.

HECHT, J. The petitioners are candidates in the coming Democratic primaries. Francis X. McGowan is a candidate for member of Assembly in the twelfth Assembly district, New York county. His designating petition contains 5,245 signatures. Three hundred and fifty signatures are required for the designation for this office under the provisions of the Election Law (Cons. Laws, ch. 17).

James G. Donovan is a candidate for the State Senate in the sixteenth Senatorial district. His designating petition contains 6,872 signatures. The Election Law requires 750 signatures.

George W. Thompson is a candidate for Representative in Congress in the sixteenth Congressional district. His designating petition contains 6,311 signatures. Seven hundred fifty signatures are required by the Election Law.

Objections were filed by Archibald Robinson to the Thompson, Donovan and McGowan petitions and by James P. Ryan to the Thompson and Donovan petitions.

At the hearing before the board of elections the only objection stressed was that the petitions were invalid in that they "bore an emblem of a star which is the official Democratic emblem selected by the Democratic State Committee for the Democratic party pursuant to Section 20 of the Election Law," and that "The designees named in said Thompson petition have not been authorized by the Democratic party to use such emblem." The board of elections invalidated the petitions on the ground that the presence of the star on said petitions was in violation of law.

This act of the board of elections may only be upheld if it be established that (1) petitioners' use of the emblem was in violation of the provisions of the Election Law, or (2) that the use of the emblem perpetrated a fraud upon the enrolled Democrats who signed the petitions to such an extent as to warrant the rejection of the petitions.

Examination of the Election Law indicates that party emblems are referred to in three instances only: (1) In section 20, which describes what may be used as an emblem by party candidates for party office, and which prohibits the use of the coat of arms of a state, a flag, a religious symbol, et cetera. (2) In paragraph 3 of section 137, which deals with independent nominating petitions and the kind of an emblem an independent body may use. (3) In paragraph 3 of section 330, which refers to the jurisdiction of the court to pass upon the right to the use of any emblem, color, party name or name of *an independent body*.

None of these provisions is applicable to designating petitions.

Section 135 of the Election Law, which sets forth the form of a designating petition, is silent with respect to the use of party emblems. Respondents, in support of their contention that the regular Democratic organization has the sole right to the use of the party emblem on designating petitions, place great reliance upon the decision of the Court of Appeals in *Matter of Hopper* v. *Britt* (204 N. Y. 524). Analysis of that decision indicates, however, that the facts were not analogous to those here presented. That case was decided under section 57 of the Election Law as it existed at that time and which provided that: "The party emblem shall constitute the committee emblem of the party. A petition for the designation of a candidate for nomination to public office or election to a party position may likewise select an emblem to distinguish the candidates designated by such petition, and such emblem shall be shown by the representation thereof upon such petition. * * *." Section 58 of the old Election Law, in part, provided: "The candidates designated by party committee shall be so arranged in the column to the extreme left."

Under those provisions as they existed in 1912 the names of designees of the "organization" were placed upon the primary ballot without the necessity of circulating petitions, and they were the only ones entitled to the use of the party emblem on the primary ballot—a right which was specifically denied to "anti-organization" candidates. Other candidates for designations had to circulate petitions upon which they could place a distinguishing emblem which also appeared upon the primary ballot. Likewise, the "organization" candidates always appeared in the column "to the extreme left" or first column on the ballot. There was no drawing for position on the ballot as is now required.

The Legislature thereafter apparently believed that the provisions above set forth gave the "organization" candidate too great an advantage, for in the very next year section 57 was repealed in its entirety, and section 58 was amended by eliminating therefrom the "column to the extreme left" position on the ballot. The tendency of the Legislature has been to give to all candidates equal right. This is evidenced, in part, by the fact that section 103 of the Election Law now provides that the position of candidates' names on the primary ballot shall be determined by lot, and section 108 prescribes a form of primary ballot which makes no distinction between "organization" and "anti-organization" candidates.

I find no legal authority for the respondents' claim that the Assembly, Senate and Congressional district committees of the regular Democratic organization have the exclusive right to the use of the party emblem on primary designating petitions. Furthermore, there is no statutory prohibition against the use of the emblem by the petitioners, and the presence of the emblem on their petitions did not render them invalid.

Considering the question of fraud, the courts have in many instances invoked their equitable power *to enjoin* the improper use of the descriptive word "regular" in primary election contests by individuals not designees of the regular organization. (*Sexton* v. *Dillon,* New York Law Journal, March 19, 1936, p. 1409; affd., 247 App. Div. 817; *Howard* v. *Cotter,* 242 App. Div. 727.)

In support of the claim of respondents that the use of the star on the designating petitions constituted a fraud, they have submitted affidavits of twenty-two voters who allege that they were induced to sign the designating petitions not because they observed the emblem of the star on the petitions, but solely as the result of false representations made to them by the persons presenting the petitions that the persons designated therein as candidates were the selection of the regular organization. Forty-eight other voters allege that they were induced to sign the designating petitions because of the presence of the star thereon, in addition to the aforesaid representations. This obviously is not sufficient to establish that designating petitions containing on an average 6,000 signatures of enrolled Democrats were, as respondents urge, so permeated with fraud as to warrant their rejection by the board of elections.

Motion granted. Settle order.