In the Matter of ANTHONY MENNELLA et al., Petitioners, *v.* MICHAEL M. MANENTE et al., Respondents.

Supreme Court, Special Term, Kings County, August 27, 1962.

*Neil M. Lieblich* for petitioners. *Joseph M. Schwartz* for Michael M. Manente and others appearing specially.

BENJAMIN BRENNER, J. This is an application to declare void the designating petition of candidates to party position and to public office to be voted for in the Democratic primary election on September 6, 1962.

Following a rather lengthy hearing, I have indicated to counsel that my attention would be confined to the following specific areas of claimed invalidity: (1) That subscribing witnesses misrepresented to the enrolled voters, signing the petition, that the candidates named therein were those chosen by the regular Democratic organization and (2) that subscribing witnesses did

not secure from said voters any expression of their intent to support such named candidates.

There are 35 subscribing witnesses to 2,203 signatures, 1,698 of which were validated by the Board of Elections. Five of those subscribing witnesses, who procured about 570 signatures, are claimed to have misrepresented the source of the petitions and it is conceded that, if sworn, they would deny the testimony given against them. Were all of these to be stricken, being satisfied as I am that such evidence of misrepresentation is credible, this would not render the petition legally insufficient as the remaining 1,130 signatures would be an ample number and in excess of the 350 required (*Matter of Thompson* v. *Cohen,* 179 Misc. 70).

Now, 3 subscribing witnesses who had procured some 360 signatures testified that none of the signers had made any mention of their intent to support the named candidates. During their testimony counsel for the contesting candidates seriously considered the possibility of giving and receiving a concession that none of the remaining subscribing witnesses procured any oral expression of such support, as a basis for a ruling as to sufficiency, confined solely to the question of the absence of a verbal expression of intention. When the proposal was abandoned most of the remaining subscribing witnesses began to reverse the original line of testimony. At first one of them testified that the voters' expression of intention was given by the 58 voters on the four sheets he procured *after* they had affixed their signatures. Four others who had procured approximately 185 signatures testified that *some* of those signatories made no expression of their intention of support. Thereafter, 6 subscribing witnesses who procured approximately 365 signatures testified that all those signatories verbally expressed their intention to support the named candidates.

It is clear to me that this gradual about face was largely due to the pinpointing of the issue in their presence during the course of the hearing. It is noteworthy that 2 of the 5 subscribing witnesses who had procured a total of some 320 signatures and who testified to the complete absence of any expression of intent to support were also named during trial as among those misrepresenting the affiliation of the named candidates. Additionally, there is credible testimony by some voters that the petition was folded when signed so as to conceal the named candidates.

The problem is presented whether the petition may be upheld in the light of overwhelming evidence that few enrolled voters were asked by subscribing witnesses whether they intended to support the named candidates. Though the problem seems basic I cannot find decisional law for guidance.

Subdivision 2 of section 135 of the Election Law requires the insertion of a declaration upon each sheet of a designating petition to the effect that the enrolled voter, signing the same, shall state his intention " to support at the ensuing primary ", the designated persons named as candidates for nomination of such party position or public office at the primary.

Subdivision 3 of section 135 of the Election Law provides for an alternate method of authentication of such signatures in the form of a statement which, in its final sentence, states: " I know each of the voters whose names are subscribed to this petition sheet containing * * * signatures and each of them subscribed the same in my presence and *upon so subscribing declared to me* that the foregoing statement, made and subscribed by him, was true." (Emphasis supplied.)

In the absence of the declaration and authentication in form and substance substantially as prescribed, the signatures appearing on such a petition would manifestly be without validity. Unless there be some affirmation or declaration of intention, however simply stated, to vote for or support the candidates listed in the petition, the signature of the enrolled voter would be valueless. The very language of the statute would indicate the need for the voter to indicate in some manner his choice of the persons named as those he wishes to support as candidates for election at the primary else the subscribing witness could not possibly be informed of that choice and intention. In my view, the failure on the part of the witness to obtain from the voter some kind of expression of that intent is fatal as otherwise it would appear to me to be a mockery of the plain intent of the law that the enrolled voters shall by their petition choose the named persons for party nomination.

When section 135 of the Election Law was amended in 1954 (L. 1954, ch. 745, § 1) to provide the present alternate method of authentication, the legislative committee studying the matter made its recommendation to eliminate invalidation of petitions due to technicalities and strict judicial construction relative to faulty jurats, failure to fill in the date of swearing and failure to appear before a notary public, etc. (Report of Joint Legislative Committee, N. Y. Legis. Doc., 1954, No. 43.) Obviously, the requirements of the statute for some expression of intent is not the kind of irregularity or technicality we are dealing with here.

It is suggested by counsel for the respondents that the expression of intent must be assumed or inferred from the very signature of the enrolled voter. I doubt this to be so from the point of view of the subscribing witness in the light of the language

of subdivision 3 of the statute, for if this were true that part of the statute referring to the witness would have ended with the words "subscribed * * * in my presence" and would not have included the added requirement as to the voters' declaration.

Thus, while it may be argued that under subdivision 2 of the act there may be no necessity for a verbal declaration of the voter's intent additional to that implied by the signatures there can be no doubt that under subdivision 3 the declaration is imperative for this latter subdivision commands the witness to ascertain the voter's intent and he can only do so through verbal communication. It is therefore difficult to believe that this requirement could be satisfied by an inference of a communication to the subscribing witness based merely on the voter's signature.

If there were complete silence on the part of both voter and witness and the voter were merely to read the petition and the witness made no inquiry at all, a construction that this would satisfy the statute would, it seems to me, only promote the circulation of petitions under circumstances of fraud. Indeed, in the case at bar, the fact that some voters were misinformed as to the source of the petition is proof of the inherent danger of the failure of the witness to obtain some verbalized statement of intent of support by the voter.

It may be said that were my view of the matter to be adopted by the appellate courts, many insurgents would have difficulty reaching the primary ballot, thereby defeating the salutary purpose of a presentation to voters of contending candidates for party position. This is probably true. But should not that opportunity be exercised by a knowing and plainly expressed intent so that, particularly in the case of a contest, it be clear that the named candidates are desired by the required number of enrollees? If this be too great a burden then the Legislature should take steps to further liberalize the requirements of designating petitions or dispense with them altogether. The natural abhorrence for disenfranchisement cannot apply where, as here, it is believed sound public policy requires a minimal number of enrolled voters to say, in plain language, that they wish to vote for a slate of candidates of their party in opposition to those elsewhere chosen.

Finding, as I do, direct evidence of misrepresentation as to the source of the petition, together with failure of all but relatively few of the subscribing witnesses to secure some expression of the voters' intent to support the named candidates, the pattern of misrepresentation and fraud thus shown compels the conclusion that the entire designating petition is invalid (*Matter of Curran* v. *Power,* 284 App. Div. 839).

I also find no evidence of forgery and, except as herein indicated, the petitioners have failed to establish fraud, by a fair preponderance of the credible evidence, relative to the claimed failure of certain voters to affix their signatures in the presence of subscribing witnesses to the extent necessary to invalidate the designating petition on that score.

The motion made by the respondents to dismiss the proceeding based on insufficiency of the allegations of this petition is denied. The petitioners' application is in all respects granted.